GLENDY WINDSOR and JOHN A. APPLEGARTH *vs.*
PHILIP BANDEL, EDWARD SICKELL and others.

*Rule for ascertaining the true amount due under Mortgages held
by a Building Association.*

Where a Building Association is prematurely dissolved, and the mortgages
held by it against the members whose shares of stock had been redeemed by
loans or advances, are forclosed, in determining the true amount due under
such mortgages, the mortgagors should be allowed, not only for the sums
paid by them as weekly dues, but also for what they paid as interest; while
they are to be charged interest at the rate of six per cent. per annum on the
sums advanced by the Association, and so from time to time on the balance
of such sums, after deducting therefrom the moneys paid by them for
weekly dues and interest. On the payment of the balance due upon their
mortgages, thus ascertained, they will be entitled to have the same released.

APPEAL from the Circuit Court of Baltimore City.

This is an appeal from a decree dismissing the bill of
complaint of the appellants for want of equity. The case
is stated in the opinion of the Court. The sections of the
Articles of Incorporation referred to in the opinion of the
Court, as having been repealed by the Resolutions of the
Association of January, 1871, are as follows:

*Article II, section* 2. Every stockholder for every share
of stock that is held in this association, shall pay the sum
of twenty-five cents on subscribing, and twenty-five cents
weekly thereafter to the treasurer, or such other person or
persons as shall from time to time by the laws or regulations
of the association be authorized to receive the same until
each unredeemed share of said stock shall be worth in cash
two hundred dollars, and there shall be funds enough in the
association to pay that amount to the holders of said unre-
deemed shares, after paying all debts of the association.

The standing committee shall then proceed to pay, satisfy and discharge, first, debts and liabilities of the association, and then pay over to the owner of each unredeemed share an equal dividend of all sums on hand, and which shall afterwards be received, until the whole shall be divided, and from the time of the commencement of the payment of such dividends, no further weekly dues or interest shall be payable, except that all arrears shall be fully paid up, and the association shall deliver to each mortgagor who has fully complied with the conditions of his mortgage, a discharge thereof, and all papers connected therewith. After the performance of the foregoing duties, this association shall cease to exist, and it shall not be sooner dissolved, nor shall this article be altered, amended or repealed without the consent of two-thirds of the voting shares belonging to this association.

*Article XIV, section* 1.—When the funds on hand, of this association, are sufficient to redeem one or more shares of its stock, said funds shall be offered to redeem that holder's share who offers to receive the lowest sum therefor. Where any member's offer shall be accepted, he shall have the privilege of having any number of shares redeemed at the rate of the accepted order, by giving the president notice immediately of the number he wishes to have redeemed; provided, always, that the shares of said stock shall not be redeemed at a greater sum than two hundred dollars; also, that no stockholder shall be entitled to receive the redemption money, who is in arrears to the association; also, that no property shall be taken as security for said redemption money out of the limits of the city of Baltimore, unless by the unanimous vote of the Standing Committee.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*John B. Wentz* and *William A. Stewart,* for the appellants.

*John Small, Jr.,* and *John William Willson,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

"The Union Building Association No. 4," was duly incorporated in 1866, under and in conformity with the provisions of the Code, Art. 26, sec. 30, &c.

The company commenced operations in February, 1866, the first subscriptions to the stock being made at that time ; the articles of incorporation were duly recorded on the 10th day of April, 1866. By these articles it was provided that the stock should be limited to one thousand shares, of which no member should be entitled to hold more than twenty unredeemed shares. It was further provided that the association should continue until each unredeemed share of stock should be worth in cash two hundred dollars.

It appears by the evidence that all the shares were subscribed, and the association went on prosperously for about a year and a half; after which a great many of the members availed themselves of the privilege of withdrawing, reserved by Article 3, sec. 1 ; in consequence of which, it was found that the affairs of the association could not be successfully carried on, and in the opinion of the directors and a large majority of the members, it was considered advisable to wind up its affairs and effect a dissolution. With this view a committee was appointed in October, 1870, who reported on the 11th day of January, 1871, in favor of winding up the affairs of the association ; at that time the number of shares was reduced to 224, of which, 133 were redeemed and 91 unredeemed or free shares. The proof in the cause conclusively shows that the association could no longer be profitably continued, and that the

interests of all concerned would be promoted by its dissolution.

Questions arose as to the mode in which the dissolution should be effected, and also the terms upon which the members whose stock had been redeemed, and against whom the company held mortgages, should be allowed to extinguish or satisfy their mortgages. In January, 1871, by resolutions regularly passed, in accordance with *Article* 26, providing for amendments, the Articles were amended, by repealing the *second section* of the *second Article,* and the *first section* of the *fourteenth Article.* These amendments were duly recorded as required by the Code, on the 2nd day of February, 1871 ; and their effect was to repeal or abrogate the provisions regulating the amount of weekly dues to be paid by the members, the time prescribed in the original Articles for the duration of the society, and the provision for the redemption of shares by the loan or advance of money and taking mortgages therefor.

At the same time, a resolution was passed proposing to members whose stock had been redeemed, to secure the release of their mortgages, by paying the money originally advanced to them, deducting therefrom the amounts which they had respectively paid *on account of weekly dues,* and without requiring them to pay the *bonus* of three dollars per share, as was required by *Article* 18, *sec.* 1, to be paid by mortgagors, voluntarily seeking to obtain releases.

It appears that these terms were accepted by all the mortgagors except the appellants, who refused to acquiesce therein, and filed their bill of complaint against the appellees, who were members holding unredeemed or free shares, and some of whom were officers of the association, charging them with a fraudulent conspiracy to dissolve the association prematurely for their own profit, to appropriate to their own use its funds and earnings, and to deprive the appellants of their just share or proportion of the same. A very careful examination of the record has satisfied us

that so far as fraud is charged against the appellees, the allegations of the bill are not supported by the proof. On the contrary, the evidence shows very clearly that all the proceedings of the association, looking to its dissolution, were conducted regularly and in good faith, and if the case of the appellants rested exclusively upon the allegations of fraud made in their bill, we should have little hesitation in affirming the decree of the Circuit Court, dismissing the bill for want of equity. But we are of opinion that the appellants are entitled to relief in respect to their mortgages held by the association; which they are entitled to have released upon the payment of the balance justly due thereon, and in order to ascertain this balance an account ought to be stated between them and the association. The bill contains a specific prayer to that effect, and the parties appellants are entitled to this equitable relief. It appears that the appellant, *Applegarth,* is a regular member of the association, having held fourteen shares, which he caused to be redeemed in March, 1867, for $1582, and executed a mortgage with the usual covenants, whereby he bound himself to pay weekly dues, and interest on that sum weekly, until each share of unredeemed stock should be worth in cash two hundred dollars. The appellant Windsor, although not a regular member, never having conformed to the rules of the association, with respect to the election and qualification of members, yet having purchased the equity of redemption in property which had been mortgaged to the association in February, 1867, upon the redemption of seventeen shares then held by a member who received an advance therefor of $1712.75 ; and having by his contract assumed the payment of the mortgage debt, he is entitled to the same relief as the other complainant, Applegarth.

It appears that from the accumulations of the company, and especially by reason of the large number of mortgagors having acquiesced in the terms proposed by the Resolution

of January, 1871, and having paid the balance of their mortgage debts, thus ascertained, there was a fund in the treasury of the association, claimed by the several members holding free or unredeemed shares, and which was sufficient to repay them more than the amount they had paid in as weekly dues; and one ground of complaint on the part of the appellants is, that they were wrongfully deprived of all participation therein. We are of opinion that this complaint is not well founded. It is very clear that they can have no just claim to participate, *as shareholders*, in the funds of the association; their shares having been redeemed. They stand in the relation of mortgagors. By the dissolution of the society before the period originally contemplated, and the alteration of the Articles, their contract is at an end. It is impossible for them to perform the covenants contained in their mortgages, and they are entitled to have them released upon the payment of the sum justly due. The only question for us to determine, is the rule by which this sum is to be ascertained. We find no difficulty in prescribing this rule in the present case.

It appears by the proof that the association had not suffered any losses, there were no outstanding debts or liabilities. The question arises between the appellants as mortgagors, and the members holding free or unredeemed shares. The latter insist upon the mode of settlement prescribed by the Resolution of January, 1871, but it is manifest that such a mode of settlement is not equitable or just towards the appellants. From the time the mortgages were executed, they or those under whom they claim, besides the weekly dues, continued to pay interest on the whole sums mentioned in the mortgages respectively, down to August or September, 1871. During that period the money advanced by the association had been gradually paid back, so that the original sum had been gradually reduced, while the interest paid continued the same. If

the association had continued as originally contemplated, and been successfully conducted, the appellants would have received the benefit of such payments, indirectly; because thereby the early termination of the society would have been promoted. That benefit they are now deprived of by the premature dissolution of the company. It is not equitable that these large payments of interest should enure exclusively to the benefit of the parties holding free shares. The original contract having been broken up, the liability of the appellants on their mortgages should be ascertained in the ordinary way. In stating the account they ought to be allowed not only for the sums paid by them as weekly dues, but also for what they paid as interest; while they are to be charged interest at the rate of six per cent. per annum on the sums advanced by the association, and so from time to time on the balance of such sums, after deducting therefrom the moneys paid by them for weekly dues and interest. On the payment of the balance due upon their mortgages, thus ascertained, they will be entitled to have the same released.

The bill ought to be retained in order that an account may be stated, and equitable relief granted to the appellants in conformity with the views herein expressed. To this end a decree will be passed reversing the decree of the Circuit Court and remanding the cause for further proceedings.

*Decree reversed, and*
*cause remanded.*

(Decided 13th May, 1874.)