(Decided 26th March, 1878.)

THE LOW STREET BUILDING ASSOCIATION, No. 6, use of LOUIS HENNIGHAUSEN and JESSE N. BOWEN, Receivers, *vs.* CHARLES and MARY ZUCKER.

*Liability of a Shareholder of an insolvent Building Association, who had received an Advance on his Shares of stock, on a Mortgage—Mode of stating Account between such Mortgagor and Mortgagee—When such Mortgagor cannot be called upon to Contribute to the Losses and liabilities of the Mortgagee.*

Where a Building Association has become incompetent to perform its obligations to its shareholders, by reason of insolvency, and its affairs have been placed in the hands of receivers, with no prospect of ever resuming its former operations, a shareholder who has obtained an advance on his shares of stock, on a mortgage which is sought to be foreclosed, is not liable to be charged for weekly dues and fines as if the Association were continuing in business, and would be able to discharge its obligations during its probable duration.

In determining the true amount due on such mortgage, the mortgagor is to be charged only for the sum advanced by the Association, with interest thereon, and so from time to time on the balance of such sum, after deducting therefrom the moneys paid by the mortgagor for weekly dues and interest, and on the payment of the balance so found due, with interest

Low Street Building Asso. No. 6, &c. *vs.* Zucker.

thereon to the date of stating the account, the mortgagor is entitled to have the mortgage released.

A mortgage given to a Building Association by a shareholder who had received an advance on his shares of stock, contained a covenant by the mortgagors, to pay the mortgagee or its assigns the weekly dues and fines until such time as the Association might have a sufficient fund to pay all the holders of the unredeemed shares of stock, the sum of $100 per share, clear of all losses and liabilities. The Association became insolvent and ceased its operations, with no prospect of ever resuming them, and with not the slightest chance of its ever being able to pay to the holders of the unredeemed shares the fixed value of $100 per share. In a proceeding to procure a decree for the sale of the mortgaged premises, under the Code of Public Local Laws, it was HELD:

That it was only in the event of the continued existence and operation of the Association and of its termination in the regular course and mode as provided in the Articles of association, the mortgagors could be required, by the terms of the covenant, to contribute to the losses and liabilities of the Association, and then only by the prolonged or extended payment of the weekly dues.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from an order of the Circuit Court sustaining the exceptions of the mortgagors to Account A, and overruling the exceptions of the Receivers to Account B, and ratifying said latter Account, and directing said Receivers upon payment to them of the amount as shown by said Account B, to be due by the said mortgagors, to release their mortgage. Account B, was stated on the theory of the mortgagors. The case is stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J., for the appellees, and submitted on brief for the appellants.

*J. N. Bowen* and *Louis Hennighausen,* for the appellants.

*Thos. R. Clendinen*, for the appellees.

ALVEY, J , delivered the opinion of the Court.

This was a proceeding under sections 782–3–4–5, of Art. 4 of the Code of Local Laws, had upon a mortgage made by the appellees to the Low Street Building Association No. 6, of Baltimore City. The Building Association became involved and ceased operations early in the year 1874, and its affairs were placed in the hands of Receivers appointed by an order of Court; and it was upon the application of the Receivers that the *ex parte* decree for the sale of the mortgaged premises was passed.

Charles Zucker, one of the appellees, was a member of the Building Association, and owned seven shares of its stock; and on the 2nd of May, 1871, he and his wife, the other appellee, made the mortgage upon which the decree was passed, upon the advance by the Association, according to the recitals in the mortgage, of the sum of seven hundred dollars, the fixed value of the seven shares of stock. The mortgage is in the usual form of those given to Building Associations in the City of Baltimore, and contains this covenant: "To pay the mortgagee or its assigns the weekly sum of two dollars and ten cents on every Wednesday, until the time arrives when the said body corporate shall have sufficient funds on hand to pay the holders of every unredeemed share of its stock, *the sum of one hundred dollars, clear of all losses and liabilities;* to pay all ground-rents and taxes for which the property hereby mortgaged|may become liable, when payable; also to pay all fines that may be imposed on them by the said mortgagee, in accordance with its Act of incorporation, and to keep the improvements on the said ground fully insured from loss by fire, for the use of the mortgagee; all of which payments and covenants shall continue in force until the said body corporate shall have sufficient funds on hand to pay the holders of every unre-

deemed share, *above all losses and liabilities, the sum of one hundred dollars*, and the said corporation shall, by the terms of its Act of incorporation, have become extinct." Then follows the clause giving consent to the passage of a decree for the sale of the mortgaged premises, under the Local Code already referred to ; the sale not to take place until default, in any of the conditions, shall have continued for eight weeks.    These are the only provisions in the mortgage that are at all material to the present controversy.

After the application for the *ex parte* decree, and as preliminary to their proceeding to execute the same, that is to say, on the 19th of November, 1874, the Receivers filed a statement of their claim, under the requirement of the statute, wherein they show that the first default in payment of weekly dues occured on the 22nd of April, 1874; and they state their claim thus :

Weekly instalments for 7 years and 6 months, being 390 weeks, *the probable duration of the Association*, on 7 shares, $819.00

Less rebate of interest for 8 years, at 3 per cent............................................. 171.99

$647.01

Arrears of dues from time of default to Oct. 29th, 1874, 28 weeks, at $2.10 per week ...................................... ........ $ 58.80

Fines for non-payment of dues, 28 weeks,  19.25

Making a total of................................ $725.06

This statement was excepted to by the mortgagors, and we think there was good ground for the exception.

If the Building Association had been an active, going concern, and there had been proof that seven years and

452 MARYLAND REPORTS.

Low Street Building Asso., No. 6, &c. vs. Zucker.

six months would be the probable duration of the corporation under its charter, then the statement would be, in principle, correct, according to the rule laid down in the case of *Robertson vs. The American Homestead Association*, 10 *Md.*, 397. But in view of the real condition of the Association in this case, it is manifest from the face of the statement, that it is neither in accordance with the fact, nor the justice of the case. The statement is made upon the theory of a simple default by the mortgagors, and a continued, operative existence of the Association for, at least, the period of seven years and six months thence to come. Whereas, while there has been a default by the mortgagors, the Association is insolvent, and in the hands of Receivers to be wound-up in due course of settlement, according to the rules and practice of a Court of equity. Part of the consideration to the shareholder for the discount or redemption of his shares by the Association, at their then fixed value. was the mode and time of payment. In such cases as this, the contract, as between the Association and the shareholder receiving the advance, assumes this form :—The Association proposes to sell to the shareholder the right of presently receiving the fixed value of the shares, upon being allowed a certain deduction from the amount, commonly called a bonus, it being, in fact, a deduction made at the time, and the shares thus discounted or redeemed are to be paid for by the continuance of the subscription and payment of weekly dues, and fines, if any incurred, until the required amount shall be raised to pay each unredeemed shareholder the fixed value of his shares in full ; that is to say, one hundred dollars per share. Thus it is that the weekly payments constitute the purchase money which the shareholder is required to pay for what he has received in advance, or in anticipation of the time for the redemption of all the shares ; and it is. for the security and ultimate payment of these weekly dues and fines that the mortgage is given. The supposed

benefit of the contract to the mortgagor consists mainly of the length of time and gradual manner in which payments are required to be made. He is not in the position of an ordinary borrower of money; he remains a member of the Association, subject to its constitution and by-laws; and in taking the advance on his shares, he is only allowed to anticipate, for a premium or bonus, the final redemption of all the shares when the funds realized may be sufficient to pay on each unredeemed share the sum of one hundred dollars, over and above all losses and liabilities.

Such being the nature of the contract and the relation of the mortgagors to the Association, the facts, which are undisputed, that the Association is insolvent, its affairs in the hands of Receivers, with no prospect of ever resuming its former operations, and with not the slightest chance of its ever being able to pay to the holders of the unredeemed shares the fixed value of one hundred dollars per share, become most material in determining the rights of the mortgagors. From these facts, it is manifest that the event will never occur, even if the corporation is not actually dissolved, when the mortgagors, according to the terms of the covenant, could be released from the payment of the weekly dues, or from the risk of incurring fines and forfeitures for non-payment. The circumstances of the Association therefore, and its inability to carry out in good faith the contract with the mortgagors, must terminate the contract as originally contemplated, and the parties must occupy the position that they would occupy if the Association were dissolved. And treating the case upon that footing it falls immediately within the principle of the case of *Windsor & Applegarth vs. Bandel,* 40 *Md.,* 172. In that case the Association had been dissolved, and in speaking of the rights of the mortgagors, who had given a mortgage on the redemption of shares, as in this case, this Court said, that by the dissolution of the Association before the period originally contemplated,

454          MARYLAND REPORTS.

Low Street Building Asso., No. 6, &c. vs. Zucker.

and the alteration of the articles, the mortgagors' contract was at an end. It was impossible for them to perform the covenants contained in their mortgages, and they were entitled to have them released upon the payment of the sum *justly* due. In this case, it being admitted that all the sums credited to the mortgagors in account B, were actually paid at the several dates as therein stated, we think the appellants have nothing to complain of in the ratification of that account.

In account A, the auditor charged the mortgagors with $700, the assumed value of the shares at the date of the mortgage, and from this sum deducted the principal only of the weekly payments from April 12th, 1871, to April 15th, 1874, leaving a balance due on the mortgage of $304.95. To this sum interest thereon, from April 15th, 1874, to December 1st, 1875, is added, and also the sum of $189.00, for estimated losses at the rate of $27 per share. To these charges the further sum of $51.80 is added as costs of the proceedings; showing altogether the sum of $575.47 for which the mortgagors are liable, according to that account. But in account B, stated upon the general principle of the application of payments in reduction of principal and interest from the time of each payment made, and excluding the charge for losses on shares, and also the amount of costs, the balance shown against the mortgagors is but $237.61, including interest calculated on the balance from the 15th of April, 1874, to 1st of December, 1875; and this latter account is the one that was adopted and ratified by the Court below.

As to the charge made in account A, for losses sustained by the Association, and apportioned to each share of the stock, by estimation, we can perceive no warrant for it. The covenant in the mortgage does not justify it in terms, nor does it authorize the charge by any fair implication. The covenant is to pay the weekly dues and fines until such time as the Association might have a sufficient fund

to pay all the holders of unredeemed shares of stock, the sum of $100 per share, clear of all losses and liabilities. This, of course, contemplated the continued existence and operation of the association, and that it should terminate in the regular course and mode as provided in the articles of Association. It was only in that event that the mortgagors could be required, by the terms of this covenant, to contribute to losses and liabilities of the Association, and then only by the prolonged or extended payment of the weekly dues. Losses by the Association are chargeable, by virtue of this covenant, in no other way.

Upon the whole, we think the Court below was right in rejecting account A, and there is nothing in the mode of stating account B, of which the appellants can complain.

*Order affirmed,*
*with costs.*

(Decided 26th March, 1878.)