(Decided 20th November, 1885.)

THE WAVERLY MUTUAL AND PERMANENT LAND, LOAN AND BUILDING ASSOCIATION OF BALTIMORE COUNTY *vs.* HELEN E. BUCK, and ADALINE A. BUCK.

*Equity proceedings—Final order—Appeal—Building association—Mortgage—Usury—Dissolution of Association—Relation of Debtor and Creditor.*

A ruling of the Court below in an equity proceeding, must, in order to form the proper basis for an appeal, be so far final as to determine and conclude the rights involved in the action, or to deny to the party who seeks redress by an appeal " the means of further

Waverly Mutual and Perm. Land, Loan & Build. Asso. *vs.* Buck.

prosecuting or defending the suit in the Court of original jurisdiction."

An appeal lies from an order passed in a proceeding for the foreclosure of a mortgage, which determines that the plaintiff is not entitled to the relief prayed for in its bill of complaint, and directs the auditor to state an account simply as between debtor and creditor.

By the terms of a building association mortgage weekly payments on a loan were required to be made, which amounted to more than six per cent., the rate of interest fixed by statute. The phraseology of the mortgage indicated that such payments were for interest, expenses, &c. HELD:

That the transaction was tainted with usury; and the combination of interest with other payments was evasive and intended to avoid the operation of the statute.

A. and B. members of a building association holding four shares of its capital stock, obtained an advance of six hundred dollars from the association, that being the par value of their shares; and delivered to the association a mortgage of real estate as security for the payment of twenty-five cents every week upon each of said four shares of stock, until such weekly payments increased by the mortgagors' proportional part of the profits accruing from the transaction of the business of the association should aggregate a sum equal to the amount of the loan. The mortgage also provided for the payment of a weekly sum of twenty-five cents on each $150, advanced for interest and expenses, with a reduction of twenty-five cents in the weekly interest upon each payment of $150 in dues. Subsequently the association, without the consent of A. and B. resolved to close its affairs, and practically suspended business. Thereupon A. and B. refused to make further payments. On a bill filed by the association against A. and B. for the foreclosure of the mortgage, it was HELD:

1st. That a condition had been created by the action of the association which was tantamount to a dissolution; and the mortgagors were released from the peculiar obligations created by the articles of the association or by the mortgage, and the existing relation between the parties was that of debtor and creditor.

2nd. That in such event equity would not sanction the retention by the mortgagors of the sum of money obtained from the mortgagee, but would enforce its repayment with interest.

3rd. That A. and B. were to be treated simply as mortgagors, and were entitled to have the mortgage released upon payment of the sum justly due.

4th. That in stating the account they ought to be allowed not only for the sums paid by them as weekly dues, but also for what they .paid as interest; while they were to be charged interest, at the rate of six per cent. per annum, on the sums advanced by the association, and· so, from time to time, on the balance of such sums, after deducting therefrom the moneys paid by them for weekly dues and interest.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*Henry W. Fox*, and *Louis P. Hennighausen*, for the appellant.

*George R. Willis*, for the appellees.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County, sitting in equity, in a cause in which the appellant was plaintiff and the appellees were defendants. The material facts forming the foundation for this controversy are revealed by the record, from which it becomes apparent, that the appellant being an incorporated building association, located and transacting business in the Town of Waverly, in Baltimore County, and the appellees, being members of this association, and holding four shares of its capital stock, they, the said appellees, obtained an advance of six hundred dollars, that sum being the par value of their shares, and executed and delivered to the association a mortgage upon certain real estate,

OCTOBER TERM, 1885.     341

Waverly Mutual and Perm. Land, Loan & Build. Asso. *vs.* Buck.

situate in said county, and belonging to them, as security for the payment of twenty-five cents to said corporation every week upon each of said four shares of stock, until such weekly payments, increased by the appellees' proportional part of the profits accruing from the transaction of the business of the association, should aggregate a sum equalizing the amount of the loan.   There is also a covenant in said mortgage making it obligatory on the appellees to pay into the treasury of the association the weekly sum of twenty-five cents on each one hundred and fifty dollars advanced for interest and expenses, with a reduction of twenty-five cents in the weekly interest upon each payment of one hundred and fifty dollars in dues ; and there are the usual covenants for the payment of taxes and insurance.   In case of default in any of the conditions of the mortgage for the period of three months, the whole debt shall be deemed due and demandable.

The appellant, on the 15th of March, 1883, filed a bill for foreclosure, averring that the mortgagors were in default because of the non-payment of dues.   The appellees in their answer, admitting that they were members of the association, and received the loan, and executed the mortgage as averred in the bill of complaint, denied that they were ever credited with any of the profits, and averred, that about the 20th of November, 1882, there was a tender made by them to the corporation of all sums of money due and owing to it under the covenants and conditions of the mortgage.

The appellees also aver in their answer, that the said mortgage is tainted with usury, and that the corporation has not such a legal existence as is necessary to enable it to perform the obligations created by the covenants; and pray a reference to the auditor, in order that an account may be stated.   To the account filed by the auditor, both parties excepted, and, upon a hearing, the papers were remanded with instructions.   The Court subsequently passed

the order from which this appeal is taken.   This order de-
termines that the plaintiff is not entitled to the relief
prayed for in its bill of complaint, and directs the auditor
to state an account simply as between debtor and creditor.

The plaintiff having appealed from the order passed by
the Circuit Court, the appellees have filed ·a motion to
dismiss the appeal.   This motion necessarily presents the
first question for·determination, for. if the appeal was pre-
maturely taken, a proper disposition of the motion would
result in a termination of the pending proceedings.

"An appeal shall be allowed from any final decree, or
order in the nature of a final decree, passed by a Court of
equity."   Art. 5, sec. 20, of the Code.

The apparent object of this statutory restriction on the
right of appeal is to prevent the protraction of litigation
to an indefinite period by reiterated applications for an
exercise of the revisory powers of the appellate tribunal.
If, for alleged errors in any interlocutory proceeding, a
case could be brought here·for revision, a multiplicity of
appeals would create vexatious delay, and might eventu-
ally result in a ruinous accumulation of costs.   To avoid
this manifest evil, an appeal on a final determination of
the questions presented by the issue, brings every sup-
posed erroneous ruling in the intermediate proceedings
under review, when all such errors as are discovered can
be corrected.   The construction of the statute has elicited
repeated decisions, and it is now a well-settled principle,
that the ruling of the Court below must, in order to form
the proper basis for an appeal, be so far final as to deter-
mine and conclude the rights involved in the action, or to
deny to the party who seeks redress by an appeal, " the
means of further prosecuting or defending the suit " in the
Court of original jurisdiction.   *Boteler & Belt vs. State,* 7
*G. & J.,* 109 ; *Welch vs. Davis,* 7 *Gill,* 364 ; *Green vs.
Hamilton,* 16 *Md.,* 326 ; *Hazlehurst vs. Morris,* 28 *Md.,* 67.

There is no perceptible analogy between the case pre-
sented by this record and that of *Dennison vs. Wantz,* 61

*Md.*, 143, which has been cited as authority in support of this motion. That was an appeal from an order overruling a demurrer, and requiring the defendant to answer by a certain day. Clearly, this was no final decision of the matters in controversy. Had the defendant answered and the cause progressed by regular procedure, the final decree might not have been adverse to the party appealing. But in the pending litigation, the order appealed from is, in effect, a decision of the very matter in controversy, and that decision is adverse to the appellant. It denies its right to the relief invoked in its bill of complaint, and it cannot proceed a step further in the prosecution of its suit. The only remedy open for it was an appeal which has been properly taken, and the motion to dismiss must, therefore, be overruled.

The sum advanced on the four shares held by the appellees, was six hundred dollars, and a weekly payment, as interest, of twenty-five cents on each share is required by the terms of the mortgage. The appellees contend that this charge is usurious, as the statute, under the provisions of which this association was incorporated, designates six per cent. as the proper rate, and inhibits the taking of more, and that, therefore, a charge in excess of the sum so designated, taints the transaction with usury. The validity of this objection is demonstrated by a simple calculation. The annual interest on six hundred dollars, at six per cent., amounts to thirty-six dollars, while, if the appellees are required to pay one dollar a week on their four shares, there will be a payment, in excess of the legal rate of interest, of sixteen dollars at the end of the year. It is true, that the phraseology employed in the mortgage indicates that this payment is for "interest, expenses, &c., &c.;" but, as has been decided in other cases, such combinations of interest with other payments, are evasive, and intended to avoid the operation of the statute and to elude the restrictions which it imposes upon parties in these

transactions. As was said in 51 *Md.*, 204, "the two subjects are distinct, and they should be kept separate." The Court below, in the order appealed from, has directed an allowance of six per cent. as interest, and no more. This determination is undoubtedly sanctioned by the decisions of this Court in cases where similar questions have been presented. *Geiger vs. The Eighth Germ. Build. Asso.*, 58 *Md.*, 573; *Home Mut. Build. Asso. vs. Thursby*, 58 *Md.*, 284; *The Peter's Build. Asso. vs. Jaecksch*, 51 *Md.*, 201; *Border State Perp. Build. Asso. vs. McCarthy*, 57 *Md.*, 555.

We are now confronted with the question in relation to the actual status of the corporation at the time of the alleged default on the part of the mortgagors. It cannot be controverted that if at the time thus designated the association had been dissolved, or had been placed by its own voluntary action in a situation which disabled it from effectually complying with the express or implied obligations imposed by the contract created by the articles of incorporation, or by the mortgage, there was a termination of the reciprocity which necessarily exists between contracting parties. In other words, if there has been on the part of the obligee, an infraction of the stipulations entered into, the obligors are released from the peculiar obligations thus specially created, and the existing relation between the parties is that of debtor and creditor. In such event equity will not sanction the retention by the mortgagors of the sum of money obtained from the mortgagee, but will enforce its repayment with interest; and this is the obvious and proper relief to be afforded when such alteration in the original relations of the parties has created an exigency demanding the intervention of the Court.

It must be remembered that few persons become members of building associations solely for the purpose of obtaining loans of money. There are other and important

advantages had in contemplation, and the assurance of obtaining these advantages operates as the impelling motive for contracting the obligations imposed in each case. The primary objects which induce the formation of these associations are too well known to require a specific enumeration. In addition to the sums borrowed, those objects constituted a valuable consideration for a contract between the appellant and appellees, and if the former has, by its own action, rendered the attainment of those objects impossible, there has been such an infraction of the contract existing between the parties as renders its rigid enforcement inequitable. The legal principle involved is not obscured by a shadow of doubt, and it is only in its application that any difficulty is encountered. A careful examination of the record is, of course, necessary in order to ascertain the peculiar posture of affairs at the inception of this litigation, and may possibly lead to a lucid and satisfactory disclosure of the facts in relation to the alleged dissolution of the association.

It appears that at a meeting held on the 18th day of September, 1882, a resolution was adopted " to wind up the affairs of the association." This resolution reads as follows :

"*Resolved,* that in view of the organization of a new building association, it is desirable to close up the accounts of the Waverly Mutual and Permanent Land, Loan and Building Association as speedily as possible, and as a means of furthering the project, the members are requested and urged to take stock in the new company, and transfer their weekly deposits of free money into the new association."

All the stockholders were not present when this resolution was adopted, and among the absentees were the appellees in this cause. On the 2d day of October, 1882, an amendment to this resolution, authorizing the directors " to wind up the association " was rejected by a maj-

ority of the stockholders. It is shewn, however, that almost immediately subsequent to the passage of the first resolution there seemed to be nearly a total cessation of business; that most of the holders of unredeemed stock withdrew and transferred their funds to the new organization; and that most of the officers and directors of the old corporation were conducting the business of the recently established association.

In view of this condition of affairs, the appellees refused a further compliance with their obligations, on the ground that there had been virtually and in effect a dissolution of the corporation without their assent. They assumed that the association was in a moribund condition, that although it had not actually ceased to exist, it was, by its own action, destroying its vitality, and that a process of disintegration was in operation. They thought that they clearly perceived a determination to replace this association by a substitution of the more recent organization. They, therefore, supposed that they could not safely make their periodical payments and could not justly be required to do so, as the advantages which formed the consideration for the contract into which they had entered could no longer be anticipated or obtained.

The position thus assumed by the appellees seems to rest on a substantial basis. It is apparent from the evidence that the corporation had nearly ceased to do business and really intended to dissolve. A dissolution could not be instantaneously accomplished, but the movement in that direction gave the appellees strong reasons for supposing that when all the holders of the unredeemed shares had withdrawn a dissolution would be effected. In other words, a condition had been created by the action of the association which was tantamount to a dissolution.

The relations originally existing between the parties to this suit had therefore undergone a material change, and the ruling of the Circuit Judge was but a recognition of

Waverly Mutual and Perm. Land, Loan & Build. Asso. *vs.* Buck.

what had been established by the decisions of this Court. The appellees are to be treated simply as mortgagors and are entitled to have the mortgage released upon payment of the sum justly due. In the language of this Court in 40 *Md.* 178: "The original contract having been broken up, the liability of the appellees on their mortgage should be ascertained in the ordinary way. In stating the account they ought to be allowed not only for the sums paid by them as weekly dues, but also for what they paid as interest; while they are to be charged interest at the rate of six per cent. per annum on the sums advanced by the association, and so from to time on the balance of such sums, after deducting therefrom the moneys paid by them for weekly dues and interest. On the payment of the balance due upon their mortgage, thus ascertained, they will be entitled to have the same released." *Windsor and Applegarth vs. Bandel, et al.,* 40 *Md.,* 178; *Williar vs. Balto. Butchers' Loan and Annuity Asso.,* 45 *Md.,* 547; *Low Street Build. Asso. vs. Zucker,* 48 *Md.,* 448.

No error being perceptible in any of the rulings of the Circuit Court, there must be an affirmance of its order.

*Order affirmed,*
*with cost to appellees.*

(Decided 20th November, 1885.)