# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

### ARMSTRONG

*v.*

## THE UNITED STATES BUILDING AND LOAN ASSOCIATION.

CONTRACTS; BUILDING AND LOAN ASSOCIATIONS; BORROWING MEMBERS; ACCOUNTING; JUDICIAL COMITY.

1. Where the contract between a borrowing member of a building association, as evidenced by his bond and deed of trust given to secure the bond, is that in consideration of the sum advanced him for the redemption of his stock he will pay to the association, as prescribed by its constitution and by-laws, certain monthly instalments from a given date until such time as the shares of stock shall be fully paid up, or for the period of eighty-four months, if the stock should not become fully paid before the expiration of that time, the insolvency of the association and the appointment of a receiver of its assets will not abrogate the contract between the parties or justify the substitution therefor of some other arrangement which the court may deem equitable.

2. It is the duty of the receiver, under such circumstances, to demand and receive from the borrower his monthly payments at the various times specified, and an accounting between them can not be enforced against the will of the borrower.

3. But, if in view of the insolvency of the association, in such a case, the borrower offers to come to an accounting with the receiver upon the theory of anticipating the further performance of his contract, waiving merely the matter of time given him, the

15 Ct. App.—2

only accounting proper is that which would charge the borrower with the present money value of the aggregate instalments of money remaining unpaid by him; that is, the amount of money which, if placed at interest, would at the expiration of the prescribed period of eighty-four months be equal to the aggregate of such remaining instalments, increased by the interest on the several separate instalments. Upon payment of the amount so found due, the borrower would be entitled to have the indebtedness canceled and his property released.

4. The borrowing member of such an association, when he transfers his stock to the association, virtually ceases to be a member, and ceases to be a stockholder, in the ordinary sense of that term, although the transfer is designated as a pledge.

5. The construction placed upon the contracts of a building association with its members, by the courts of the State in which the association is incorporated, will be followed by the courts of this District, especially when there is nothing in our laws or decisions to the contrary.

No. 887. Submitted April 14, 1899. Decided May 3, 1899.

HEARING on an appeal from an order or decree of the Supreme Court of the District of Columbia, overruling exceptions to and ratifying and confirming a report of the auditor stating a method of accounting between the receiver of an insolvent building association and borrowing members. *Reversed.*

The COURT in its opinion stated the case as follows:

The proceedings which are brought here by this appeal seem to be in some measure only collateral to the cause in which they were had. In a suit instituted by one Jacob S. Redman against the appellee, the United States Building and Loan Association, which appears to be a body corporate organized under the laws of the State of Virginia, Harvey T. Winfield was appointed receiver; but what the purpose was of the suit, or what the scope was of the duties of the receiver, we are not advised, further than that it became part of the duty of the receiver to settle with such persons as had received loans or advances of money from the association. On the day of his appointment he filed a petition in which he requested instructions from the court as to the

method to be pursued by him in such settlement. In this petition he said:

"Members of the defendant association who have also received loans or advances upon their stock generally desire to repay and settle up such loans and advances at once, and a number have applied to this receiver to learn how much money is required of them in order to make such settlements and obtain releases of the mortgages or deeds of trust upon their property, and the receiver desires instructions from the court as to the method to be employed in determining the indebtedness of the aforesaid members of the defendant association."

The court, however, instead of directly giving any instructions, referred the cause to the auditor "to state an account of the amounts due by the various members of the defendant association who have received from time to time loans or advances from said association, repayment of which has been and is secured by bonds and deeds of trust, in order that said loans or advances may be at once paid to, settled, and collected by the receiver herein."

In other words, it referred it to the auditor to determine the method of accounting in the first instance.

The auditor made his report; in which, after consideration of the act of incorporation of the association and of its by-laws, and of the character of the transactions between the association and those who borrowed from it, he said:

"I think that under the conditions in this case we are limited to one of two methods of accounting:

"1st. To charge the sum advanced with interest and apply as partial payments the dues on stock and interest paid, omitting the premium; or—

"2d. To treat the eighty-four months named in the bond as the conventional period of payment, charging that number of the stipulated sums and giving credits for the payments made.

"My conclusion is that the latter is the proper method to

be adopted and followed in the statement of these accounts, as being equitable under all the cirumstances."

Exceptions to this report were filed on behalf of the association and of the receiver, and the exceptions were sustained by the court, and the cause was referred back to the auditor with directions to state the account anew. Specific directions were given to him as to the method of statement, which were as follows:

"In stating said amounts the auditor shall charge said members with the full amount received by them on account of said loans or advances, together with legal interest thereon from the time such loans or advances were received, and he shall give said members credit for all payments made by them on account of interest and premium upon the principle of partial payments; and in any future dividends that may be made to the stockholders of the defendant association on account of their stock those members who may have obtained loans or advances from said association shall, if they have repaid said loans or advances, receive, equally with the investing or non-borrowing members, a *pro rata* share of such dividends."

A second report was thereupon filed by the auditor, prepared in accordance with these instructions.

At this point in the proceedings, William P. Armstrong, one of the appellants, who seems not to have been previously a party to the suit, but who appears from his petition to have been a member of the association, and a borrower from it, was permitted to intervene, and, together with the other appellants here,—whether these were intervenors also or original parties to the suit, does not appear from the record before us—was allowed, as it would seem, after the expiration of the usual time limited for that purpose, to file exceptions to the auditor's second report. But these exceptions were overruled, and the report was ratified and confirmed; and from the order of affirmance the present appeal has been taken.

D. C.]                    Argument of Counsel.

*Messrs. Douglass & Douglass* and *Mr. Joseph D. Wright* for the appellant Armstrong:

1. The borrowing members of the insolvent association should be charged only with amount they have actually received, with legal interest, and credited with all of their payments upon the stock, interest and premium, upon the principle of partial payments. *Windsor* v. *Bandel*, 40 Md. 172; *Homestead Assn.* v. *King*, 58 Md. 279; *Low Street Assn.* v. *Zucker*, 48 Md. 452; *Peters Assn.* v. *Jaeksch*, 51 Md. 198; *Buist* v. *Bryan*, 29 L. R. A. (S. C.) 127; 13 Endlich on Building & Loan Assns., 333, 373, 496, 498, 502; *Cook* v. *Kent*, 105 Mass. 254; *Randall* v. *National Assn.*, 42 Neb. 809; *Lime City Assn.* v. *Wagner*, 122 Ind. 78; *Waverly Assn.* v. *Buck*, 64 Md. 338; *Randall* v. *Building & Loan Assn.*, 42 Neb. 809; *Listner* v. *Log Cabin Assn.*, 38 Md. 115; *Casan* v. *Seldner*, 77 Va. 293; *Strauss* v. *B. & L. Assn.*, 117 N. C. 308: 30 L. R. A. 693; *Meyers* v. *Schayer*, 9 Mack. 257.

2. The association, in making the loan to appellant, redeemed his stock and became the owner thereof, as appears by the terms of the assignment itself, as well as the conditions of the bond and deed of trust. The appellant, therefore, ceased to be a stockholder, but became a debtor of the association with the obligation to continue the payments upon the redeemed stock for a period not exceeding seven years. His rights, therefore, as a stockholder having ceased, his liabilities as such must also cease. The stock of appellant, when the seven years expired, was not to be returned to him, but the bond and deed of trust were then to be canceled. The investing stockholder is charged with full notice of the terms of the contract between the borrower and the association. And in consideration of the profits to be derived from interest and premium, he assumes the risk of the association's ability to mature its stock within the time designated.

*Mr. J. H. Ralston* and *Mr. F. L. Siddons* for the appellee:

1. The single question presented by the appeal is this: What is the correct and equitable method of settlement between the receiver of an insolvent building and loan association, appointed to wind up its affairs, and a stockholder therein who has received an advance or loan upon his shares of stock, for which he is required to make certain monthly payments, until such shares mature or become fully paid up or for a period of eighty-four months, if such shares do not mature or become fully paid up before the expiration of that time?

All authorities are agreed that upon the insolvency of a building and loan association, the obligation of members, whether advanced or unadvanced, to continue their payments, ceases. The contract between them and the association is at an end. Endlich on Building Associations (2d Ed.), Sec. 523, and cases cited. The duty of the receiver of such insolvent association is to collect the assets (generally consisting of the mortgages made by advanced members), with all convenient speed; pay the expenses of administration, and distribute the surplus, if any, *pro rata* among the shareholders. In cases of insolvency of building associations, upon whom must the losses incurred fall? To charge the advanced member with the amount of the advance and legal interest, and credit him with all payments made by him, which is the method contended for by the appellants, is to relieve such advanced member of all share in the losses of the association. And it must be conceded that a few courts have countenanced this way of settling such advances. But it is submitted that the true method, the equitable and modern method, is to charge such member with the advance received and legal interest, and credit him with the payments made on account of premium and interest, and then leave him to share *pro rata* with the unadvanced members in the surplus assets realized by the receiver. In this way he shares with the unadvanced member in the losses that have occurred, and from every

point of view, it is just that he should do so. The advanced member is the only one that has derived any benefit from his connection with the association that has become insol-vent. Thornton and Blackledge on Building and Loan Associations, Sec. 355; Endlich on Building Associations (2d Ed.), page 518; *Towle* v. *Investment Society*, 61 Fed. Rep. 446; *Strohen* v. *Loan Association,* 115 Pa. 273; *Rogers* v. *Hargo*, 92 Tenn. 35; *Loan Association* v. *Carroll,* 4 Pa. Dist. Rep. 6; *Building Association* v. *Goodrich,* 48 Ga. 448; *Leahy* v. *Loan Association,* 76 N. W. Rep. 625; *Curtis* v. *Granite State Association,* 69 Conn. 6.

2. In this case the intervenors did not cease to be members by receiving the advances or loans upon their stock. The assignment by them of their stock to the association was for the purpose of collateral security exclusively. Endlich, page 451.

Mr. Justice MORRIS delivered the opinion of the Court:

There is no formal assignment of errors on behalf of the appellants; and to that extent, at least, the brief on behalf of the appellants is defective. But as it is plain from the record that there is only one point of contention between the parties—namely, the rule by which the accounts between them should be stated—and as that point is set forth with sufficient clearness in the beginning of the argument contained in the brief of the appellants, a formal assignment of errors may be waived in this case.

The sole question presented for adjudication here is as to the proper rule to be followed in the statement of an account between the receiver of an insolvent building and loan association and the persons, called borrowing members, who have become indebted to the association for loans made to them on the security of bond and mortgage and the pledge of their stock in the association. It is contended by the appellants "that the borrowing members of the insolvent association should be charged only with the amount which

they have actually received with legal interest, and credited with all payments upon the stock, interest, and premium, upon the principle of partial payments;" and on behalf of the appellee, it is claimed that the true and equitable rule is, as laid down in the decree of the court below, to charge the borrowing member with the advance received and legal interest thereon, and to credit him with the payments made on account of premium and interest, but not with the payments on account of stock, for which, under this method, the borrowing member is to be remitted to his *pro rata* share, with the members of the association who have not borrowed, in the final distribution of the surplus assets, if any, collected by the receiver. In other words, as between these two claims, the question is, whether, in the accounting the payments assumed to have been made on account of stock should be taken into consideration and allowed to the borrower as payments on the loan made to him by the association. This is the only element of controversy.

It seems to us that neither one of the two contentions corrrectly expresses the true rule applicable in the present case; although one of them may perhaps work out the same result as would the true rule. As we understand it, the controversy before us is not for the final settlement and winding up of the affairs of this association, which, as it is a corporation of the State of Virginia, it may perhaps not be competent for the courts of this District to entertain. We understand the controversy to have reference simply to the adjudication of certain contractual relations between the association, on the one side, and certain of its members who have become its creditors, on the other side, in respect of property in the District of Columbia involved in those relations. There are contracts between the parties; it is those contracts which are here to be settled; and those contracts themselves plainly suggest the rule by which they are to be adjudicated.

The contract between the association and Armstrong is

the only one that is set forth in the record before us; but it seems to be assumed, and we may therefore assume, that all the other contracts are of like tenor and effect.  That contract is evidenced by a bond and a deed of trust by way of mortgage given to secure that bond; and it is in the condition of the bond that the specific contract is to be found. That condition is, that, in consideration of the sum of fifteen hundred dollars advanced to him by the association for the redemption of fifteen shares of the stock thereof, the appellant Armstrong should pay to the association, in the manner prescribed by its charter, constitution and by-laws, monthly instalments of twenty-five dollars and fifty cents each, from the first day of April, 1892, until such time as the shares of stock should be fully paid up, or for the period of eighty-four months, if the stock should not become fully paid before the expiration of that time.  There is also a provision for the payment of any fines and charges that might accrue from default or violation of the by-laws; but, as there is no question here of any default or violation of by-law, the provision is unimportant in our present consideration.  This is the whole contract between the parties; and there is no other.  The charter and by-laws add nothing to it, and take nothing away from it.  And even if it could be held that there was originally another contract or contractual relation, that between the association and the appellant as a member or stockholder of the association, it is quite evident that this contractual relation was merged in the supervening contract which has been recited.

Now, what was the duty or liability of the appellant under this contract?  Certainly there was no liability, under any circumstances, to pay back the amount advanced, with interest; and there can, therefore, be no question of charging him with any such amount.  He never entered into any contract that would justify his being charged with any such amount.  His undertaking was to pay to the association each and every month, for a period not to exceed

eighty-four months, the sum of twenty-five dollars and fifty
cents, with a possibility that the liability might be ex-
tinguished at an earlier date.   This is the whole extent of
his contract; and this contract he has fully and faithfully
performed thus far, and he tenders himself ready and will-
ing to perform the residue of it, and even to anticipate such
performance by the payment now of all the remaining in-
stalments, with proper interest.   If the company had re-
mained solvent and continued in business until the end of
the stipulated period of eighty-four months, it is very clear
that, if the appellant had then complied with his contract
by the prompt payment of the remaining instalments, all
liability on his part on the contract would then be at an
end, the condition of his bond would have been fully per-
formed, the bond itself by its own terms would have become
void, and the appellant would have been entitled to a re-
lease of the mortgage or deed of trust upon his property.
How, then, can the insolvency of the company, the other
party to the contract, affect the liability of the appellant, or
force upon the latter a new contract, if the appellant is then
and there ready and willing to complete immediately the
part of the existing contract to be performed by himself ?
We are not aware of any principle of law or rule of reason
that makes the insolvency of one party to a contract a suf-
ficient reason for the change of the liability of the other
party against his will.

Insolvency, of course, may operate as a ground for the
rescission of executory contracts at the instance of the sol-
vent party.   For, when on that ground, or any other
ground, one party becomes incapacitated from the further
performance of a contract that yet remains to a greater or
less extent executory, the consideration fails which binds
that other party, and that other is entitled, if he so elects,
to be relieved from the further performance that would
otherwise be incumbent on him.   But there is no case of
that kind here.   The contract has been fully performed by

the association ; and there is absolutely nothing whatever remaining to be done by it. The whole consideration has long since moved from it to the other contracting party. Only on the appellant's side does the contract remain executory, and he offers to execute it to the fullest extent of his stipulated liability and to anticipate the final execution of that liability. And there is nothing in the insolvency of the other party that incapacitates it from receiving the complete and final payment offered to be paid by the appellant. If the association, therefore, has fully performed its part of the contract with the appellant before its insolvency accrued and the appellant on his side has fully performed all that thus far it has been incumbent on him to perform, and is ready and willing forthwith to perform the remainder and with that view to waive his right to the stipulated time wherein to perform, it is not apparent to us why he should not be permitted to do so, and thereupon be released from his liability.

Undoubtedly there is apparent equity in the rule claimed by the appellee to be the just and proper one ; and there may be cases where it would be right and just to apply that rule. If a shareholder in a voluntary association, or a stockholder in a corporation, becomes also a borrower from the body and yet retains to the fullest extent unimpaired all the rights of a shareholder or stockholder, with the right to participate in the profits and the liability to become ratably responsible for losses, and has an equal voice with every other shareholder or stockholder in the management of the organization ; and if thereafter, for insolvency or for any other cause, it becomes necessary to wind up the affairs of such organization, then undoubtedly it may be proper, in any accounting between the organization and the stockholder debtor to it, to segregate the rights and liabilities of the stockholder from the rights and liabilities of the debtor, so as that the stockholder, who is a debtor, should not be given an undue advantage over other

stockholders.   This is the dictate of equity and justice.   But no such principle is applicable in the present case.

It is apparent, as was shown in argument in this case, that in these building and loan associations, when they are organized with an honest motive and continue to be honestly managed, there are two classes of persons, both of moderate means, who become interested in them—one, that of men with moderate incomes, who desire to invest their little savings from time to time in such way as to bring them the best returns—the other, that of men who desire small amounts of money for themselves wherewith to build a home, and whose only mode of repayment is by small periodical instalments.   It is the purpose of building and loan associations to bring these two classes together, and to serve as the medium of communication between them.   It is unimportant here that this laudable purpose is occasionally used as a cloak by designing schemers to procure usurious interest for their money, or more frequently is thwarted by the intrusion of unscrupulous speculators with the intention to wreck the enterprise and appropriate its assets to themselves.   Nor is it perhaps important for our present consideration that the association's ultimate hope of profit is based upon the unsound system of fines and penalties and the anticipation of disaster to some of its members resulting in their sacrifice of some or all of that which they have contributed to the general fund.   But, assuming the best basis and a proper management of such organizations, we find them to be simply mediums of exchange, as we have indicated, a mutual association of borrowers and lenders, but the latter ultimately the sole owners of the association.

In the organization there is reference to stock and shares of stock; but it is very evident that as compared to ordinary joint stock companies these expressions are misleading.

Possibly, as long as the members of these building and loan associations remain lenders and do not become borrowers, there is but little difference between them and the

stockholders of joint stock companies in respect of their rights and liabilities, the principal difference perhaps being that, while the stock of these latter is anticipated to be paid up in full immediately upon the organization of the companies, or within a reasonable time thereafter, and such payment in full is always an outstanding liability on the part of the stockholders, in the building and loan associations, on the other hand, payment in full for stock is not a personal liability and is never anticipated until the time fixed for the dissolution of the organization, when the stock is supposed, as the expression is, fully to mature, by the payment of monthly dues, interest, premiums, fines and penalties. But when the members become borrowers, their interest in the association is absolutely at an end, except as to the contract as borrowers. They have no further interest than to pay their monthly instalments as stipulated in that contract. They have no right to participate in the ultimate profits of the organization, if such there should be; and that there will be such is of course always the anticipation; and if there should be losses, they are not liable to contribute to defray such losses. It is true that, in order to qualify themselves to become borrowers, they must become members of the organization by the ownership of a number of shares of stock commensurate with the amount of money which they propose to procure to be advanced to them. But when they become borrowers their holding of stock becomes merely nominal; it is simply a measure for the amount of the monthly payments which they are to make thereafter. In fact, it is part of the contract which they make as borrowers that they at the same time assign and transfer all their stock to the association; and the stock is then said to be redeemed by the association. That stock never reverts to the borrower. When the contract is fully performed, the benefit of the stock inures exclusively to the benefit of the association, that is, to the benefit of the so-called investing or non-borrowing members. In fact, to all

legal intents and purposes, when the stock becomes pledged at the time of the advancement of the money, the association becomes the absolute owner of it, and the borrower or borrowing member has no further connection whatever with it beyond the liability to make the payments of which it is the stipulated measure. There is, it is true, one contingency in which, by the by-laws of the association, the borrowing member is allowed to re-invest himself with the ownership of this stock; and that is, by the practical rescission of the contract, by the repayment of the money advanced to him with interest. But this is at the option of' the borrowing member; and there is no reciprocal right in the association to compel such choice on the part of the borrower. The existence, therefore, of such an option does not affect the statement which has been made that the borrowing member virtually ceases to be a member, and ceases to be a stockholder, in the ordinary sense of that term, as soon as he has transferred his stock to the association, although that transfer is designated as a pledge.

It is very clear, therefore, that though the rule laid down by the decree of the court below may be the proper and more equitable rule in those cases in which the borrowing member of an organization, notwithstanding that he has become a borrower, yet remains a stockholder, with all the substantial rights and privileges of a stockholder, it is not the proper rule in the present instance, where the borrower has ceased in fact to be a stockholder. If we had any doubts on this point, they would be solved in favor of the conclusion which we have reached, by the decision of the Supreme Court of Appeals of the State of Virginia in a precisely similar case, a decision which, under the circumstances, we are disposed to regard as controlling. For the organization now before us is an incorporation of the State of Virginia, amenable to the laws of that State in all that concerns its organization and the relation to it of its members. It was incorporated in 1890; and those who entered

into relation with it as members must be presumed to have done so with special reference to the laws of that State as construed by its court of last resort.

In the case of *Cason* v. *Seldner*, 77 Va. 293, decided in 1883, the Supreme Court of Appeals of Virginia, in an opinion by its presiding justice, from which there was no dissent, and which does not appear to have since been modified in any manner, said:

"The appellant was the owner of ten shares of the stock of the Mechanics' Building and Loan Association of Norfolk, which in March, 1868, were redeemed for $1,000. The articles of association are similar to the articles of like associations organized and doing business under the laws of Virginia. The stockholders are required to pay monthly the sum of one dollar each, and those whose shares have been redeemed are required to pay in addition the interest monthly on the sums advanced to them respectively in the redemption of their shares. These payments are to continue until the fund accumulated is sufficient to pay the sum of $200 on each of the unredeemed shares, when the association is to cease to exist, unless sooner dissolved by a vote of the stockholders. As security for the payment of his monthly dues and interest, the stockholder, whose shares are redeemed, is required to execute a bond, conditioned for such monthly payments, secured by deed of trust on real estate. With this requirement the appellant complied.

"This suit was brought by two stockholders, owners of unredeemed shares, who in the bill allege that the affairs of the association have been grossly mismanaged; that many of the stockholders have been illegally released from their obligations to the association; that the association has ceased to be profitable or operative; and that its affairs should be wound up under the authority and supervision of the court. The prayer of the bill is for an injunction and the appointment of a receiver, that the assets and debts be collected and distributed, and for general relief. The

cause was referred to a commissioner for the proper accounts to be taken, who ascertained and reported the present indebtedness of the appellant as of that date to be $839.17. This was arrived at by adopting as a basis of calculation the status of the association on July 1, 1871, and then calculating the number of instalments it would require to accumulate a fund sufficient to pay $200 on each unredeemed share with allowance of discount for anticipation of payments. For the sum so reported to be payable by the appellant a decree was entered against him, and in the event of his failure to pay within a prescribed time, the property conveyed in trust was decreed to be sold. From that decree he obtained an appeal to this court. The errors assigned are, that all proper parties were not before the court when the decree was entered, and that it is in violation of the appellant's rights. under his contract with the association when his shares were redeemed.

"The object of the suit was to wind up the affairs of the association, and with that view to have the debts and assets collected for distribution among those entitled thereto. Of the fifteen stockholders who are alleged to have been illegally released from their obligations to the association, aggregating the sum of $14,166, five only were made parties to the suit. All should have been made parties, and if found to have been illegally released, their liability should have been enforced. This the appellant has the right to require to be done in respect to all stockholders liable to contribute to the fund out of which the unredeemed shares are payable. By the terms of his contract with the association when his shares were redeemed, he undertook to pay monthly to the association, in lieu of the loan advanced to him, one dollar, and the interest on the sum borrowed, until such time as the company could pay $200 on each of its unredeemed shares, unless sooner dissolved by a vote of the stockholders. With this contract he has fully complied, and upon its terms he has the right to stand as the measure

of his liability. He can not be held liable otherwise than as he has contracted. When his shares were redeemed they became the property of the association, and were sunk and extinguished. The loan advanced to him was no part of the debt of the appellant. His obligation is to pay, in lieu of the sum advanced, the monthly instalments as he has contracted, and no more. *White* v. *Building Fund Association of Lexington*, 22 Gratt. 233; *Winchester Building Association* v. *Gilbert and others*, 23 Gratt. 787. By requiring the payment *in solido* of the sum reported by the commissioner, the court below departed from the terms of the appellant's contract, and imposed upon him, although not in default, a liability which he has never assumed.

"It is provided by the statute (Acts of Assembly, 1852, page 82, Sec. 7) that, unless sooner dissolved by a vote of the stockholders, an association like this, organized under its provisions, shall cease to exist when it becomes able to pay on each of its shares such sum as shall be agreed on in its articles of association. In this case the sum fixed by the articles is $200 on each of the unredeemed shares, after paying the liabilities of the company. No other provision is made for the dissolution of the organization. Until it ceases to exist, the obligation of the appellant to pay the stipulated monthly dues and interest continues. In like manner a reciprocal obligation rests upon every other stockholder to pay as required by the articles of association. All of the stockholders, therefore, should have been brought before the court and their respective liabilities to the association enforced, including those illegally released, if any such were found. Provision should also have been made for the collection of their monthly payments as they became due, and for the enforcement of all liabilities and the collection of all debts and assets of the association, and the fund preserved until sufficient to pay all of its debts, if any, and $200 on each of the unredeemed shares, unless the company is sooner dissolved by a vote of the stockholders.

"For these reasons the decree of the court below must be reversed and the cause remanded for further proceedings in conformity with the foregoing views."

We have cited thus at length from the decision of the Supreme Court of Appeals of the State of Virginia, for the reason that the facts in that case were very similar to those in the case now before us, with such obvious differences as do not affect the questions here involved, and for the reason that the question of accounting in that case was identical with that which we have to determine. The fact that the corporation now before us is a corporation of the State of Virginia, and its contracts with its members were entered into with special reference to the laws of that State, would seem to necessitate that we should give to those contracts the construction which the courts of that State have given, especially when there is nothing in our own laws or decisions to the contrary. In fact, judicial decision in this District, so far as it has gone (*Meyers* v. *Schayer*, 9 Mackey, 254), and, as it would seem, the great preponderance of judicial decisions elsewhere, are in favor of the position taken by the Supreme Court of Appeals of Virginia. *Peters Building and Loan Association* v. *Jaeksch*, 51 Md. 198; *Low Street Building and Loan Association* v. *Zucker*, 48 Md. 448; *Windsor* v. *Bandel*, 40 Md. 172; *Listner* v. *Log Cabin Building and Loan Association*, 38 Md. 115; *Waverly Mutual Loan and Building Association of Baltimore County* v. *Buck*, 64 Md. 338; *Strauss* v. *Carolina Interstate Building and Loan Association*, 117 N. C. 308; *Lime City Building and Loan Association* v. *Wagner*, 122 Ind. 78; *Randall* v. *Building and Loan Association*, 42 Neb. 809; *Cook* v. *Kent*, 105 Mass. 254; *Buist* v. *Bryan*, (South Carolina Supreme Court), 29 Law Rep. Ann. 127.

As we have said, the rule claimed by the appellee may be proper in other cases and under different conditions; but there is nothing to justify its application to the case now under consideration. Its fallacy, as sought to be applied here, seems to arise from the mistaken assumption that the

mere insolvency of a building and loan association, such as we have here, will justify the abrogation of an express contract between it and one of its members, and the substitution for that contract of some other arrangement which a court may deem equitable. Without some warrant for this in the incorporation or by-laws of the association—and we find no such warrant in the record before us—no court has the right to enforce any such substitution against the will of the party who stands ready and willing to perform his part of the contract.

The contract of the appellants was to make certain specified monthly payments not to extend beyond eighty-four months. The greater part of that contract they have performed; the remainder of it they offer themselves ready and willing to perform. It is the duty of the receiver to demand and receive their monthly payments at the various times specified; and so long as they continue to make those monthly payments, there is no reason and no occasion for any accounting between them. But since the appellants and others, in view of the insolvent condition of the association, have offered to come to an accounting with the receiver upon the theory of anticipating the further performance of their several contracts and releasing themselves and their property from further liability, waiving merely the matter of time given to them by those contracts, and inasmuch as the petition of the receiver for instructions merely contemplates the direction of the court to him as to what he may safely accept as a full and complete compliance with those contracts, there is propriety in an accounting that would determine those several sums.

The accounting, however, is not a general accounting between the parties upon a basis different from that which they have themselves established. There can be no question about charging these appellants with the amounts advanced to them, and legal interest thereon, and crediting them with the amounts paid by them. There is no contract,

express or implied, entered into by them that would justify such accounting, and the court has no right to force such a contract upon them against their will. The only accounting, proper or necessary, is that which would determine the present money value of the aggregate instalments of money yet remaining to be paid by them—in the case of Armstrong the present money value of nine monthly instalments of $25.50 each—that is, the amount of money, which, if placed at interest, would at the end of nine months be equal to $229.50, increased by the interest on the several separate sums of $25.50 thereof. The determination of this amount involves only a simple arithmetical calculation.

Upon the determination of this amount and the payment thereof to the receiver, the party paying the same will be entitled to a cancelation of his indebtedness and the release of his property from the mortgage.

From what we have said it follows, in our opinion, that there was error in the order or decree appealed from, and that this order or decree should be reversed. It will accordingly be *reversed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia for further proceedings therein, in conformity with this opinion. And it is so ordered.*