The Hampstead Building Association No. 11, of Baltimore City *vs.* Calvin J. King.

*Proper mode of Stating an Account between a Building Association whose affairs are in course of Liquidation, as Mortgagee, and a Stockholder as Mortgagor—When Mortgagor entitled to have Mortgage to a Building Association Released.*

Where the affairs of a Building Association are in course of liquidation, the original purposes having been abandoned by mutual consent, the proper mode of stating an account between such Association and a shareholder who has obtained an advance on his shares of stock, on a mortgage, is to charge the mortgagor with the sum actually advanced to him by the Association, and interest thereon at the rate of six per cent. per annum, deducting from time to time the payments made by the mortgagor, according to the rule applicable to an account between debtor and creditor. And where by an account so stated, it is shown that the mortgagor has paid a considerable sum in excess of the mortgage debt, he is entitled to have the mortgage released.

Appeal from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before Bartol, C. J., Stone, Miller, Alvey and Irving, J.

*Geo. Hawkins Williams,* for the appellant.

*B. Rosenheim,* and *John Carson,* for the appellee.

Bartol, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, declaring the appellee's mortgage held by the appellant to be fully satisfied and paid, and direct-

ing the appellant to release the same. The decree was based upon the account stated by the auditor, from which it appeared the appellee had paid a considerable sum in excess of the mortgage debt. This result was reached by taking as the basis of the calculation the sum actually advanced to the appellee in money, and counting interest thereon at *six per cent. per annum*, deducting from time to time the payments made by the mortgagor, according to the rule applicable to an account between debtor and creditor.

The only question presented by the appeal is whether, under the facts and circumstances disclosed in the record, the auditor's account was correctly stated.

In support of the decree, the appellee contends (we quote from the brief) "that the society had been practically dissolved; that the mortgagor could not perform the covenants of his mortgage, and was, therefore, entitled to have the same released upon the payment of the sum justly due," according to the rule established in *Windsor, et al. vs. Bandel*, 40 *Md.*, 172, and *Low Street Building Association vs. Zucker*, 48 *Md.*, 453. "And even if the Association be not actually dissolved, if there be no chance of paying the unredeemed shares their par value, and the Association be unable to carry out its contract with the mortgagor, so as to enable him to get a release of the mortgage, according to the terms of his covenants, then the contract as originally contemplated is terminated, and the appellee occupies the same position as if the Association were dissolved," and the rule above stated is applicable.

We think this is a sound position, and an examination of the facts disclosed by the record has satisfied us that the case falls clearly within it.

By the agreed statement of facts contained in the record, it was admitted "that there are now 40 shares (according to the proof afterwards taken, 45 *shares*,) on

which no money has been advanced, and that $88 had been paid on each share; and 222 shares on which money has been advanced, either on mortgage, or on the shares themselves. The weekly receipts of the Association now average $15, and are regularly now being paid week by week. In addition to its mortgages, the Association owns property valued at $3000, but probably not worth so much, and has no money in cash, and does not owe one dollar to any one, each week's receipts being at once paid out to shareholders according to its laws. The holders of the free shares have notified the appellant of their desire to withdraw from the Association under their right to do so by virtue of *Art. XIV* of the Constitution, and are awaiting the incoming of funds to enable the Association to gratify their demand, to its great profit, each shareholder agreeing to take what he has paid in per share, without interest."

*Art. XIV* referred to, requires that "any member desirous to withdraw shall notify the Directory in writing, which shall refund to him all his weekly dues after deducting losses."

The case was submitted in the Court below on the 1st day of March 1881; on the 7th day of March, a petition was filed by appellant, alleging that the agreed statement was made inadvertently, and was not accurate; that the holders of free shares gave parol notice of their wish to withdraw, but gave no notice in writing as required by the constitution, that on further reflection they had rescinded such desire, and were willing to continue. And prayed to be allowed to prove the same, and that the agreed statement be to that extent altered. A commission was issued as prayed, and the testimony of the Secretary and President was taken. With the commission was returned the following paper, marked Defendant's Exhibit, No. 1, which was proved to have been signed by the parties at a regular meeting of the society on the day of its date:—

"Baltimore, March 2nd 1881.

"We the undersigned having heretofore given verbal notice to withdraw our free shares, the same not having been done, in accordance with the Constitution, do hereby give notice that we rescind our notice so given to the Hampstead Building Association, No. 11, of Baltimore City."

The paper was signed by all the persons holding free shares, designating the number of shares held by each respectively. The proof shows very conclusively that the paper was prepared and signed for the purpose of avoiding the effect which it was feared their previous action might have upon this suit.

It appears from the evidence of the secretary, that verbal notices were given by all the holders of free shares of their intention to withdraw. The several notices were given at different times; the first on the 20th day of October 1880, and the last on the 29th day of December 1880. The notices when given were entered on the books of the society, which acted thereon, and on the 24th day of November 1880, paid *Michael Kolb for 5 shares* $427.50, *Josiah Goodman for* 3 *shares* $257.25, *Gustave Friday for* 1 *share* $87.75, and on the 23rd day of February 1881, paid *Longhorst for* 1 *share* $86, and to *Miss Bixler* $100 *on account.*

No money was paid into the Association by the holders of free shares after the verbal notices were given, until March 9th 1881, when Michael Kolb paid 25 cents, Henry Schaub 50 cents, and Josiah Goodman 50 cents.

The witness, *Mr. Dorsey,* the President, was asked, (20*th Interrogatory,*) "State all your knowledge in reference to the payment of free shares withdrawn since November 3rd 1880—answered,

"The way we have been doing since I became President, which was a few weeks afterwards, I believe, *we*

*would pay* off as we got the money, and a great many of the shares were bought up by redeemed members, to pay back their indebtedness; but we allowed them the amount paid in as cash, for each share so purchased from the unredeemed members, that is the way we have been going on since I have been President."

*21st Interrogatory.* "Do you mean by indebtedness, a mortgage or a pledge of shares, in your last answer?

*Answer.* "Indebtedness on mortgage; there was some few, but I don't know how many shares that were hypothecated."

It is evident from the testimony,

1st. That the Association voluntarily waived the terms of Article XIV requiring written notices, and accepted as sufficient verbal notices, which were entered on the books, and acted on by the society.

2nd. That the attempted rescission of the previous notices, by the paper of March 2nd 1881, was not made in good faith, as is shown by the fact that from the time the verbal notices had been given, the parties ceased to pay their weekly dues, as they were required to do by the constitution of the society. *Lister's Case,* 38 *Md.,* 116.

3rd. That the affairs of the Association were in course of liquidation, the original purposes having been abandoned by mutual consent, and it had become impossible for the appellee to perform the covenants in his mortgage according to their terms, and consequently his contract was at an end. It follows for the reasons before stated, that the mode of stating the account adopted by the auditor was correct.

*Decree affirmed.*

(Decided 13th April, 1882.)