GEORGE W. WATSON ᴇᴛ ᴀʟ. *v.* ALICE ANNA
STREET LOAN & SAVINGS ASSN.

[No. 75, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Walter C. Mylander*, with whom was *Nathan Patz* on the brief, for the appellants.

*R. Contee Rose*, with whom were *Preston & Field* on the brief, for the appellee.

Parke, J., delivered the opinion of the Court.

The present appeal involves the right of the corporate mortgagee, under a loan made and mortgage taken pursuant to section 169 of article 23 of the Code, to charge the mortgagor, according to a provision of the mortgagee's by-laws, with the loss occasioned to the mortgagee by the redemption of the mortgage debt before its maturity.

George W. Watson and Teresa M. Watson, his wife, the plaintiffs, applied for a loan of the Alice Anna Street Loan & Savings Association of Baltimore City, the defendant, an association incorporated under the laws of Maryland. The practice in matters similar to that in litigation is for the company to issue stock to the borrower in the amount of the loan, and then to purchase or redeem the stock by making a loan to the borrower to its full agreed amount, and taking a mortgage lien on the borrower's property to secure the money advanced, paid or borrowed in this fictional issue and redemption of the stock. See *Border State etc. Assn. v. Hilleary*, 68 Md. 52, 55. This stock, so issued and thus redeemed, is called redeemed stock, and the process is a technical compliance with the statutory law on the subject of

building or homestead associations. Code, art. 23, secs. 161–170. When the stock is so redeemed, it is cancelled by statutory mandate, and the corporation may issue an equal number of new shares in their stead. Section 169.

The defendant advanced to the plaintiffs as such temporary members of the defendant association the sum of $25,000 on 250 shares of the defendant's stock at the same time the plaintiffs executed a mortgage lien on their real estate to secure the payment of the loan. At this stage the shares of stock issued to the plaintiffs became redeemed and cancelled stock; and the plaintiffs no longer thereafter held any shares in the association. So, with the delivery of the mortgage deed on December 13th, 1927, the plaintiffs, by statutory declaration, ceased to be stockholders, and could not vote for any purpose nor be eligible for any of the offices of the corporation. Section 169. Moreover, the constitution of the association prescribed as a qualification for membership the possession of one or more shares. The several rights and obligations of the plaintiffs, therefore, are not the result of membership in the association, but are fixed and determined by the provisions and stipulations of the mortgage deed or by agreement. If the measure of any right or promise is to be found in the constitution, regulations, or by-laws of the defendant, it is by force of an appropriate term of the mortgage deed or of contract.

Without possessing a single share of the defendant's stock, with no right to dividend nor to participate in the earnings, accumulations, or profits of the association, but obligated by the mortgage deed to pay the full amount of the sum borrowed, with interest, in small weekly installments extending over a period of seven years and eight months, the plaintiffs have no interest in the assets or funds of the association, and no liability to bear their proportion of the losses, and the relation between them and the corporation is simply that of mortgagors and mortgagee. *Williar v. Balto. Butchers' etc. Assn.*, 45 Md. 546, 560-563; *Venable's Syllabus of Real Property* (Brodie Ed.), 248-250. Since the plaintiffs are

not members of the association, they are, therefore, not bound by its by-laws, unless through an agreement to that effect or made so by statute. 1 *Machen on Corporations,* secs. 733-737.

Section 169 of article 23 of the Code declares that the association shall have the power to enforce the payment of all dues, legal interest, or premiums from its borrowers by such fines or forfeitures as the directors may from time to time provide in the by-laws; and to take a mortgage on the property securing the loan that is conditioned for the repayment in weekly installments by the borrower to the corporation of the money loaned or advanced, including dues, interest, premium on each share and all fines, assessments, and penalties incurred according to the by-laws in respect thereof. Accordingly, the provisions of the by-laws with respect to these fines, assessments, and penalties are statutory conditions of the mortgage transaction.

Again, if there are expressly incorporated in the mortgage deed provisions which show that the covenants were with reference to all or certain of the corporate by-laws; or, if the mortgagors had actual knowledge of particular terms of the by-laws prescribing the conditions upon which the mortgagor would have the right to anticipate by payment in full the maturity of the mortgage debt, and the parties are found to have contracted with reference to such terms, the parties, in either case, are bound by these provisions of the by-laws. 1 *Machen on Corporations,* sec. 736.

Examining first the mortgage, and omitting the terms which are not essential to the present inquiry, it will be found that the parties covenanted with respect to the by-laws in several matters. Thus the mortgagors stipulated that, in case of any default, the whole mortgage claim "as ascertainable under the provisions of the constitution and by-laws" of the defendant should be due and payable. In addition, the mortgagors covenanted to pay to the mortgagee weekly (1) the sum of twenty-five cents on each of said 250 shares of stock as *dues,* until these continued weekly payments of dues shall

equal $100 for each of said 250 shares or, in other words, $25,000, the principal of the loan; and (2) the further sum of twelve cents for each of said shares as *interest and premium* until the par value of every one of said shares shall successively be paid, with an abatement of twelve cents for every $100 as and when paid on the principal; and (3) the additional sum of $15.50 to be applied to the payment of the taxes, ground rent, water rent, insurance and other public dues and charges, provided, if this third weekly sum shall not be sufficient in any one year to discharge these current expenses, the mortgagors would pay the difference, but, if the yearly aggregate of the last mentioned weekly sum be more than enough, the excess should be credited by the mortgagee on the fines imposed by the mortgagee in accordance with its constitution and by-laws, and the interest and principal of the mortgage debt.

The mortgage debt and the amounts of the weekly payments required to discharge the principal and interest of this debt, together with the premium, distributed in weekly payments, charged for the loan, are known and definitely specified in the mortgage; and the third weekly amount of $15.50 is the estimate of what will be sufficient to meet the enumerated current expenses usually chargeable against a property in a city. So, the explicit terms of the mortgage provide the measure of the mortgagors' obligations, except with respect to one item alone, and that is a contingent and incalculable amount, as it relates to the fines and penalties lawfully imposed upon the mortgagors by the mortgagee for some minor breach of performance. To know the occasion for the imposition of such fines and penalties, and the amount to be inflicted, recourse must be had to the by-laws, and so the mortgage incorporates by reference the appropriate portions of the by-laws, which is as the statute anticipated. Code, art. 23, secs. 169, 162.

As there was no default on the part of the mortgagors and no fine or penalty imposed and unpaid, the provisions of the by-laws, which are made a part of the mortgage deed by reference, had not accelerated the maturity of the whole un-

paid debt and do not affect the question on this record. At the time of the negotiations for the loan of December 13th, 1927, to the plaintiffs, there were, however, two provisions of the by-laws which do relate to the pending controversy. The first of these in that: "The board of directors make a charge for the repayment of loans prior to maturity, the charge to be left to the discretion of the board." This by-law purports to have been an amendment, which was passed on March 17th, 1925. There was no proof of its adoption, and it was not authenticated so as to be accepted as *prima facie* evidence under the provisions of Code, art. 23, sec. 16. The record does not show clearly how this paper became a part of the record. At the close of the plaintiff's case the defendant offered a prayer demurring to the legal sufficiency of the evidence. The court then inquired if "all these by-laws and constitution are in evidence." The by-law in question had not been offered in evidence by the plaintiffs, but counsel for the defendant suggested that all the by-laws should be; and the record shows an argument followed, and the court then granted defendant's prayer. The only way in which the by-law could have been considered by the court as in evidence would have been by an agreement of counsel, which does not appear. However, the plaintiffs were not members of the association, and the proof is clear that the printed by-laws given by the defendant to the plaintiffs did not contain this by-law, and, not having been shown to have had any knowledge or notice of it, the rights of the plaintiffs could not have been affected by this by-law. So the question of its forming a part of the record and the suggested objections to its reasonableness need not receive any further consideration.

The other by-law was offered in evidence, and it provides:

"If a holder of redeemed shares wishes to withdraw afterwards he may be released upon the payment of one hundred dollars per share with the deduction of such sum as the weekly dues paid by him will amount to at the time of said release, together with an adjustment of all fines and premiums then in arrears, and of the losses of said association prop-

erly to be charged against such holder on account of said shares."

Unlike the by-law first discussed, the one last quoted was a part of what purported to be the complete constitution and by-laws of the association, which are printed in the pass book in which the mortgagee credited the weekly deposits of dues by the mortgagors. The association delivered this pass book to the mortgagors for the purpose of providing them with a book which would constantly disclose the current state of the principal debt, and which would inform the mortgagors of the conditions and regulations upon which the mortgage loan had been procured. The association, also, gave to its mortgagors another book for the entry of the other weekly payments covenanted to be made. These by-laws prescribed the conditions upon which the loan was obtained and made. At the time the loan was received and the mortgage delivered, the books, with the printed by-laws, were given to the mortgagors as part of a single transaction. The testimony tends to show that the mortgagors were familiar with the contents of the printed by-laws. The mortgage, also, referred to the by-laws and, by this reference, made them a part of the mortgage to the extent they were pertinent. The mortgage, however, was silent with respect to the right of the mortgagors to anticipate by payment the maturity of the mortgage debt. So the by-law authorizing the borrower to redeem is not in conflict with any provision of the mortgage, but constitutes a continuing offer of the mortgagee to accept payment in full at any time upon a compliance by the mortgagors with the terms of the offer. If it had not been for the grant of this beneficial privilege, the covenants of the mortgagors would have required them to continue to pay the stipulated weekly installments until the principal and interest of the mortgage debt and the other obligations had slowly been satisfied.

While the mortgagors were not members of the association, yet their position as borrowers was affected by the special form of the business of the association, and the uniformity of its methods in making, pursuant to its by-laws, loans upon

the security of real or leasehold estate, and in being paid the principal and interest of the loan in small weekly installments. It is because of the peculiar terms upon which the mortgage debt in building or loan associations is discharged that this option or privilege of redemption is so prevalent a condition of the loan, and there can be no question that, through the by-law, the association offered, and the mortgagors, by their acceptance of the loan with knowledge of the printed by-laws, assented to, these by-laws as a constituent part of the contract.

The treaty between the parties was carried on with reference to the powers of the corporation as limited and regulated by its by-laws, and was concluded by the simultaneous delivery of the amount of the loan and of the printed form of the by-laws to the mortgagors and of the mortgage deed to the mortgagee. See *Frank v. Morrison,* 58 Md. 423, 438. The mortgage and the by-laws were so delivered because they were contemporaneous, complementary, and connected documents of a single transaction between the parties, to which they had all assented. The terms of the contract are plainly not complete without the by-laws. So far as the several provisions of the printed by-laws in existence at the date of the transaction are referable to the relation of the mortgagors and mortgagee, these by-laws and mortgage must be construed as one instrument.

The principle here relied upon and applied was stated by Judge Miller in *Hinkley v. Wheelwright,* 29 Md. 341, 348. He wrote: "There is no principle of law or equity which forbids parties capable of acting for themselves, from making conditional contracts for the sale of their property, real or personal, or which forbids a vendor to make an absolute conveyance of the property sold subject to an agreement, that he shall be entitled to a reconveyance upon the repayment of the purchase money, or any other sum certain, on or before a fixed day, or to make any other stipulation by which the conveyance shall become void or remain absolute." And later in the same opinion the court quotes from Chancellor Bland

to the effect: "Where there are several distinct instruments. of writing they must all be taken together, and the contract deduced from a fair construction of the whole; and evidence *dehors* the writings may be let in, not as a means of explaining or construing them, but to show what was the real and true character of the whole contract; and if it appears. to have been intended only as a mortgage security, the right of redemption will not be allowed to be fettered by any conditions disadvantageous to the mortgagor." *Waters' Lessee v. Riggin,* 19 Md. 536, 553; *Williston on Contracts,* sec. 628. Compare *McCahan v. Columbian Bldg. Assn.,* 40 Md. 226, 234-238, and *Robertson v. American Homestead Assn.,* 10 Md. 397. In both which cases facts were different, as mortgagor was a member and shared in profits, which were applied in reduction of his loan.

It is therefore concluded that, under the by-law quoted, the mortgagors had a right to accelerate the day of redemption; and when they availed themselves of this option the by-law specifies the mode of settlement.

In May, 1928, about five months after the mortgagors had obtained the loan, the mortgagors applied for and secured a release of the mortgage lien by a satisfactory compliance with the requirements of the by-law, except in respect of "the losses of the association properly to be charged" against the mortgagors on account of the redeemed or cancelled shares. The testimony is that the mortgagee estimated this loss at $475.44, which was deducted from the deposit account accumulated in the course of the weekly payments to the mortgagee for the liquidation of current expenses, and the residue paid to the mortgagors. The mortgagors have sued for the recovery of this retained sum of money on the theory that the whole amount is due them. The mortgagee, according to the testimony of the husband, which was the only evidence on the subject, fixed the loss at two per centum ($475.44) of the amount of the mortgage debt at the time of redemption. This controversy is a mixed question of law and of fact, and the meagre evidence on this record did not justify the *nisi*

*prius* court in instructing the jury at the close of the plaintiffs' case that there was no legally sufficient evidence to entitle them to recover.

The burden of proof was upon the plaintiffs to establish a case, and this was done by proving the payment in full of all their obligations, except the loss within the terms of the by-law. The plaintiffs, however, did offer evidence tending to prove that the retention by the mortgagee of two per centum of the debt was not a calculation of the loss sustained but a charge for the release, which would have been imposed at the rate of four per centum, if the retained expense account ($500) in its hands had been large enough. An arbitrary levy was evidence that the sum retained was not a loss, and, as proof of the actual loss sustained was necessarily in the hands of the association, the defendant should have been required to go forward with its proof of actual loss within the meaning of the by-law. Although the testimony is vague, it is susceptible of the interpretation that the defendant justified to the plaintiffs the charge of two per centum on the ground that the association would sustain a loss of income during the period between the premature payment of the mortgage debt and when the association could again make it productive of revenue by a new investment, but the evidence does not disclose, but rather negatives, any connection between the rate of two per centum and this loss, if it was so sustained. See 2 *Jones on Mortgages* (8th Ed.), sec. 1137 (888).

In addition to the exception to the granting of the prayer, there was another one objecting to the exclusion from the testimony of the husband of his statement that he had dealings with the association about eighteen months or two years before the mortgage in evidence. The testimony was so indefinite that its exclusion was not prejudicial to the plaintiffs. Because of harmful error in granting defendant's prayer, the judgment must be reversed.

*Judgment reversed, with costs, and case remanded for trial.*