POLISH-AMERICAN BUILDING & LOAN ASSOCIATION, INC., *v.* MARYANNA DEMBOWCZYK.

[No. 22, April Term, 1934.]

*Decided June 14th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Marion A. Figinski,* for the appellant.

*Bernard M. Savage,* with whom was *Samuel Bass* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee, Maryanna Dembowczyk, complainant below, on May 20th, 1933, filed her bill of complaint in the Circuit Court No. 2 of Baltimore City, wherein it is alleged that she opened two savings accounts with the appellant, the Polish-American Building & Loan Association, Inc., defendant below, the first on June 13th, 1927, with an initial deposit of $14.15, and received from the defendant savings account deposit book No. 3040, and the second on January 28th, 1928, with a deposit of $2,150, and received from the defendant savings account deposit book No. 3071, both of these books being filed as exhibits with the bill of complaint; that she has made demand upon the defendant for the various sums due her, which the defendant refused and still refuses to pay; that upon further demand for said sums on deposit by complainant's counsel, they were advised by the defendant's counsel that said sums so deposited were accepted as free share accounts, and that the notation "savings account" in the deposit books was a misprint, but complainant states that, since the issuance of said passbooks to her, books have been issued to other persons, bearing also the notation "savings account No. ———," and that at the time of the issuance of said books, there were numerous signs

on the front of the defendant's building, 2813 O'Donnell Street, inviting the public to open savings accounts and join the Christmas Savings Club; "that the defendant corporation, by its agents, servants, officers, and directors has practiced deception and perpetrated fraud upon your complainant, in that on the 3rd day of January, 1928, it issued its passbook to the complainant in the sum of $2,150, and that the said passbook specifically stated that the money was accepted as 'savings account No. 3071,' and the complainant was told by one Jaworski, the agent who issued said savings deposit book, at the time of its issuance, that the said savings deposit could be withdrawn upon demand, and that said savings deposit would bear interest at the rate of six per centum per annum; that the said defendant corporation has from time to time accepted further deposits upon this account, but upon demand being made by the complainant for her money on deposit under the aforementioned savings account, the defendant corporation, in contravention of the specific language used in the said passbook and representation made by above named agent, and the signs mentioned in paragraph 4 of this bill inviting the public to open savings accounts and upon all of which the complainant did rely, did claim that the account in question is not a savings account, but that the complainant was a free shareholder, and therefore subject to the rules and regulations pertaining to stockholders"; there then follows the same allegation in respect to the deposit and account contained in passbook No. 3040; that the complainant is advised, believes, and therefore avers that the defendant is paying large sums of money weekly to its stockholders, and is depleting its available cash to such an extent that there will be no funds on hand to pay complainant unless it is enjoined and restrained from paying to its stockholders. The prayers of the bill are, that the defendant be ordered to pay the balance of $696.58 with interest at six per cent. per annum from October 1st, 1932, and the sum of $3,713.45 with interest at six per cent. per annum from April 1st, 1932, to the

complainant; that the defendant be restrained and enjoined from paying any money to stockholders, until said sums due the complainant are paid to her; and for general relief.

On the 25th of May, 1933, the chancellor passed an order requiring the defendant to pay the sums mentioned in the bill of complaint, represented by the two passbooks referred to, with interest, to the complainant, and that the defendant be enjoined and restrained from paying any sums to its stockholders until the complainant is paid in full, unless cause to the contrary be shown on or before the 5th day of June, 1933. On the last mentioned date the defendant filed a demurrer to the bill of complaint, wherein it is alleged, (1) that the complainant had not stated in her bill such a case as entitled her to any relief in equity; and (2) "that heretofore, to wit: on the 29th day of March, 1933, the complainant herein filed a bill of complaint against your respondent in Circuit Court of Baltimore City, embracing the same subject-matter and facts as are the basis of this suit, which bill of complaint is filed herewith and marked Respondent's Exhibit No. 1 and prayed to be taken as a part hereof; that your respondent demurred and answered to the said bill of complaint so filed in the Circuit Court of Baltimore City, and the matter was set down for a hearing on the demurrer, and after long and thorough investigation, in which the court and counsel for both sides had taken part, by way of conferences in the judge's chambers, the matter was argued in open court by both sides to the controversy, and after argument the matter was held *sub curia* by his Honor Judge Stump, and after due consideration, on the 5th day of May, 1933, the demurrer to the bill of complaint was sustained without leave to amend, and the bill was dismissed. The order of dismissal is filed herewith and marked Respondent's Exhibit No. 2, all of which proceedings are evidenced by a certified copy of docket entries from the Circuit Court of Baltimore City, and marked Respondent's Exhibit No. 3, all of said Exhibits are prayed to be taken as a part of

this demurrer, that the said order dismissing the bill of complaint in Circuit Court of Baltimore City has not been appealed and it is final and conclusive upon the complainant herein." There was filed with the demurrer the exhibits referred to therein.

On October 16th, 1933, the demurrer was overruled, with leave to answer. The defendant then filed an answer, wherein the same allegations set forth in the second paragraph of the demurrer are again made, and specifically denying the allegations of fact in the bill. The answer further alleges that the books issued to the complainant have printed in them the constitution of the defendant corporation, in the English and Polish languages; that on the inside of the books appear the words: "That the accounts are subject to the rules and regulations of this association"; that the complainant did not comply with the rules and regulations set out in the defendant's constitution and printed in the books of the complainant, pertaining to withdrawals; that the defendant is now operating on a *pro rata* basis under section 171A of article 23 of the Code of Public General Laws of Maryland (as added by Acts 1933, ch. 47) ; and that it is ready, willing, and able to pay the complainant her *pro rata* share at its regular meetings, provided she complies with the rules and regulations as set forth in its constitution.

Subsequently testimony was taken in open court, after which the chancellor passed, on December 5th, 1933, the following order: "It is hereby ordered this 5th day of December, 1933, by the Circuit Court No. 2 of Baltimore City, that the complainant, Maryanna Dembowczyk, be and is hereby declared to be a general creditor, and not a free share holder or stockholder, of the defendant corporation, the Polish American Building and Loan Association, Incorporated, in the amount of six hundred and ninety-six dollars and fifty-eight cents ($696.58) and three thousand seven hundred and thirteen dollars and forty-five cents ($3,713.45), with interest at six per-cent (6%) per annum, from October 1st, 1932, and April 1st,

1932, respectively, being the sums due her on savings deposit books Nos. 3040 and 3071 respectively, and it is further ordered that the complainant, as a general creditor, shall be paid in full, with interest at six per cent (6%) until so paid in full, before any payments are made to free share holders or stockholders of this building association. And it is further ordered that the said defendant corporation be and is hereby enjoined and restrained from paying the banks or any other general creditors, if any, on its indebtedness except on a *pro rata* basis with the complainant, provided, however, that nothing herein contained shall affect the right of the banks to foreclose on any collateral that it may have in its hands." It is from this order that the appeal here is prosecuted.

The record presents two questions for determination: First, the question of *res adjudicata;* and, second, the question of whether or not the complainant is a savings depositor or a free share holder of the defendant corporation. Considering them in the above order, the contention of the appellant is that the demurrer to the bill should have been sustained, because the facts stated in the second paragraph of the demurrer constitute *res adjudicata* as to the present case. That question cannot be raised by demurrer to the bill, unless on the face of the bill there are facts set forth which would amount to *res adjudicata*. In other words, the demurrer only goes to the facts apparent upon the face of the bill. There is no mention whatever in the bill of complaint of any prior litigation between the parties in respect to the subject-matter embraced in the present case; and the demurrer was properly overruled. The same question, however, is presented by the answer, which contains the allegations made in the demurrer, and is equivalent to a plea of *res adjudicata* at law. The exhibits filed and testimony taken on this point show that on March 29th, 1933, the appellee filed her bill of complaint in the Circuit Court of Baltimore City against the appellant, which contained similar allegations to the present bill of complaint, and, in addition, allegations of the corporation's insolvency, and

gross mismanagement by its directors and officers in the operation thereof; that it would be to the best interest of the creditors and savings account depositors that a receiver be appointed to take charge of the assets of the defendant corporation, under the supervision of the court, and that an injunction issue restraining the officers and agents of the defendant corporation from in any way disposing of its books, papers, or assets, and directing them to deliver and turn them over to the receiver. A demurrer was filed to that bill, and the chancellor sustained the demurrer and dismissed the bill of complaint on May 5th, 1933.

It is clearly apparent from a reading of the two bills that while they were between the same parties, the object and purpose and the relief asked for are entirely different and distinct. The purpose of the first bill was to have a receiver appointed for the defendant corporation, because of insolvency and mismanagement; and that was the only relief asked for, with the exception of an incidental prayer that the assets, property, books, and papers of the corporation be turned over to the receiver, this being collateral to the main relief, and for the purpose, should a receiver be appointed, of the defendant being required to turn over to such receiver the property and effects, books, and papers of the defendant corporation. The demurrer was sustained without leave to amend, and the bill dismissed. The effect of such an order was to hold that the bill did not make out such a case as entitled the complainant to the appointment of a receiver, and the chancellor therefore refused the relief asked for.

The appointment of a receiver is within the sound discretion of the court, and this power should be exercised with caution and circumspection. The appointment of a receiver should never be made because it could do no harm, and the facts alleged or proven, in order to bring into action this extraordinary and far reaching power, should show in a clear and convincing manner that without such an appointment there would be danger of a great damage to the party asking for the the re-

ceiver, that it is necessary for the protection and preservation of the rights of the parties in interest. An equity court has always had this power, to be exercised in its sound discretion; and by the Act of 1933, chapter 531, it is expressly provided: "Notwithstanding any allegation or proof of insolvency, the appointment of a receiver shall remain in all cases within the sound judicial discretion of the court."

The bill filed in the case now here on appeal does not ask for the appointment of a receiver, but only for a declaratory decree or order declaring the complainant to be a savings depositor and ordering that the defendant pay to her the sums shown to be due by the passbooks issued her, before any payments are made to the stockholders or free share holders of the defendant corporation; and, further, that the defendant, its officers and agents, be enjoined from paying or turning over any of its funds or assets to its stockholders or free share holders until the complainant is settled with in full. In our opinion, it is an untenable proposition that, because a chancellor previously, upon application of the same complainant, has denied a receivership, such action precludes the maintaining of any subsequent suit, of whatever nature, for the enforcement of her rights. The dismissal of the first bill simply held that the court would not, upon the allegations of the bill, and the proof, if any, adduced at that time, appoint a receiver; but it in no way affects a case such as is made out by the present bill.

The second question is, in our opinion, the important one, the decision of which depends upon whether or not the record before us establishes that the complainant turned her money over to the defendant as a savings depositor, or did she by so doing become a "stockholder," or, as it is termed, a "free shareholder" in the corporation? The solution of this legal proposition depends upon a finding of fact, which finding was in favor of the complainant by the chancellor. Evidence was taken in open court, testimony of witnesses given, and documentary and other exhibits offered; and unless this court can

conclude that the finding of fact reached by the chancellor is clearly erroneous, it should not be disturbed. This rule is a sound and salutary one, which finds support in a line of decisions of this court. If, however, this court was considering the proposition without regard to that rule, we are convinced that there was no error in the chancellor's conclusion on the facts. The defendant is a corporation organized as a building and loan association in 1913, and has been doing business in the City of Baltimore since that time. Its incorporators, owners, and managers appear to have been largely of Polish extraction. The complainant is of that nationality. The place of business of the defendant corporation is 2813 O'Donnell Street, Baltimore. The front of the building is constructed of ornamental brickwork, with a large archway over the entrance, the door and windows fronting on the street being protected by heavy grating or iron bars. As you enter the building, there are two large signs, on either side of the doorway, and between the doorway and the windows, one with the inscription "Loans on mortgages," and the other "We pay 6% on savings," under which follows the times at which it is open. The general appearance of the building is similar to bank buildings.

The testimony of the complainant is that she desired to open a savings account, and that she went to the defendant's place of business; that it was being conducted by people of her nationality, and she could understand them and make herself understood, she not being able to read or write or speak English. Her first business with the defendant was on June 13th, 1927, when she opened an account by making a deposit of $14.15 and receiving from the defendant a passbook, No. 3040. Upon the cover of this book appeared: "Polish American Building Association, Inc., 2813 O'Donnell St.," the complainant's name and the number 3040. On the inside of the book is printed the constitution of the association in both Polish and English; next, the name and address of the complainant, the number of the account, and the account in full, showing deposits, entries of interest, and some deductions or with-

drawals. This account, opened by the deposit of $14.15 in June, 1927, shows interest added every six months, April and October 1st of each year, and now shows a balance, as of January 31st, 1933, of $696.58. There then follows: "Name: Maryanna Dembowczyk. Subject only to my order in trust for self and Senoweska Dembowczyk, joint owner, subject to the order of either, the balance at the death of either to belong to the survivor." The other account involved in this case is evidenced by a passbook, No. 3071, and was opened in January, 1928, by a deposit of $2,150, to the right of which is entered "six per cent." and the name of the teller or secretary. The account is continued as described for that contained in passbook No. 3040, and shows a balance on October 1st, 1932, of $3,803.45, after which follows the name "Maryanna Dembowczyk. Subject only to my order in trust for self and Mary Dembowczyk, minor, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor."

An analysis of these two accounts shows that every six months the interest was entered on the book and became a part of the principal, upon which interest was paid at the end of the next six months. There is nothing to indicate that these amounts entered as designated, as interest, were dividends as claimed by the defendant. On the contrary, the form of the account, and the wording of the deposit, such as "in trust" for named parties, "subject to the order of either, the balance at the death of either to belong to the survivor," indicate that the form of the deposit and method of its being kept were similar if not identical with the forms and accounts contained in savings bank books. Before making the deposit, in each intance, according to the complainant, she talked with the president or secretary or both, and was told that she could deposit money there and would be given six per cent. interest thereon, with the right to withdraw it at any time she might need it. The $2,150 deposit with which she opened the account evidenced by passbook No. 3071 was made, according to the passbook, on January 3rd,

1928, and she was allowed interest at the rate of six per cent. from the date of the deposit rather than from the 1st of April following, as was the usual custom. In addition, there appears on the inside of this book "Savings Account No. ————." The fact that she was allowed interest from the date of the deposit indicates strongly the desire of the defendant to have her make the deposit, and tends to corroborate her version of what she was told at the time the deposits were made. It is also shown by evidence undisputed that the defendant advertised for and received deposits of "Christmas savings," put in from time to time during the year, interest allowed thereon, and paid upon demand a short while before Christmas.

Taking into consideration the appearance of the building, the large sign as you enter the door "6% On Savings," the fact that they did take Christmas savings accounts, the form of the deposit as evidenced by the passbooks, and the way in which those accounts were kept in the passbooks, together with the testimony of the complainant as to the conversation which she had with the officers of the defendant at the time of making the initial deposits, we can reach no other conclusion than that she is a savings depositor, and, as such, a creditor of the defendant, entitled to be paid in full before anything is paid to the stockholders or free share holders.

The appellant invokes chapter 47 of the Acts of 1933, sec. 171A, which provides: "No association incorporated under Sections 161 to 171, both inclusive of this Article (Article 23), and no building or homestead association incorporated under any law of this State, and doing businesse herein, shall, prior to June 1, 1935, be required to pay out at any regular meeting of such association or corporation to any holder of unredeemed shares wholly or partially paid up, a greater amount than his *pro rata* share of the total amount of dues received by such association or corporation from borrowing members at such meeting in the ratio which the total paid in value of the shares demanded for redemption bears to the total paid in value of unredeemed shares then outstanding."

From what we have said, it will be seen that this section has no application to the case before us, for the reason that we hold the complainant here is a savings depositor and not a holder of unredeemed shares.

Finding no error in respect to the law, and agreeing with the chancellor's finding of fact, the order or decree appealed from will be affirmed.

*Order or decree affirmed, with costs.*