ANTON FREDERICK ET AL. *v.* CHARLES C. LYONS ET AL., RECEIVERS.

KAULFMAN WASKINS *v.* CHARLES C. LYONS ET AL., RECEIVERS.

[Nos. 13, 14, October Term, 1937.]

■■■■■■■■

*Decided October 29th, 1937.*

■■■■■■■■

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William C. Rogers* and *Edward J. Colgan, Jr.,* with whom was *Edward A. McGovern* on the brief, for the appellants.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom were *J. Clarke Murphy* and *Charles E. Moylan* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

These appeals are from dismissals of petitions to require receivers of a building association, now insolvent, to allow in full, prior to any distribution to ordinary shareholders, money paid for shares pledged to the association for additional security on loans to borrowers. There are no facts in dispute.

The association was an ordinary homestead association, and had the usual free or unredeemed shares, of a par value of $100 each, and the redeemed shares, on which that par value had been loaned to members borrowing

on mortgages. Code, art. 23, secs. 161 to 171 (as amended) ; *Watson v. Loan & Savings Assn.*, 158 Md. 339, 148 A. 420. It is a common practice of associations in Baltimore City, in order to lend on real estate, the security of which is deemed inadequate to secure all the loans requested, to accept as additional security hypothecations of shares of persons other than the borrowers; and the pledged shares in these instances were hypothecated in accordance with that practice. The association never received deposits of money; it did no banking business; its transactions were all with shares.

In the first case, Anton Frederick and his wife sought a loan of $2,200 on real property deemed to be sufficient security for only $1,200, and Anna Frederick, mother of Anton Frederick, and a free shareholder, pledged ten of her existing shares, and the transaction was evidenced by a written agreement in the form of a letter signed by her and addressed to the directors of the association. By its terms she agreed that, in consideration of the loan to her son, she would hypothecate the shares with the association as collateral security for the repayment of the amount loaned, "it being understood that as soon as said amount shall have been reduced to such sum as in the discretion of the Board shall be regarded as security by the property itself, I am to have the privilege of surrendering said stock and receiving therefore its full paid par value." Ownership in this association was regularly evidenced either by certificates or by "Free Share Books," in which entries were made of dealings between the shareholder and the association. Mrs. Frederick had a book, and a note of the hypothecation was made on that and on the ledger sheet of the association. This transaction being completed, twenty-two shares were issued to Anton Frederick, the borrower, and his wife, and duly redeemed upon the completion of a loan and mortgage on their property. There were, then, twenty-two shares issued to the borrower, and the additional ten shares of the mother were pledged, for the same

loan. The mother's interest in the association was, upon her death, assigned to the son prior to the receivership.

Kaulfman Waskins, the other petitioner and appellant, and a free shareholder before the transactions considered, made hypothecations for additional security on four loans. One was a hypothecation of $1,500 in shares to secure a loan to a Karl H. Kahn, of a total sum of $5,000, and the agreement signed by Waskins recited that, in consideration of the making of the loan on Kahn's property, and as collateral security for its repayment, he would hypothecate with the association $1,500, "said hypothecation being a part of the funds now on deposit with your association under Free Share Savings Account no. 1331." It further stated that, "It is understood and agreed that as soon as the Mortgage to which this agreement of hypothecation refers has been reduced to the amount of Three Thousand Five Hundred Dollars ($3,500), I am to have the privilege of withdrawing from your association the full amount of the sum hypothecated." Waskins did not, in fact, use for this hypothecation any of the shares which he already owned, and which were evidenced in an existing book numbered 1173. He paid in $1,500 in new money, and received a new book numbered 1331, for fifteen shares. Kahn received the full fifty shares.

For a second loan, to Richard Gregory and wife, of $1,800, Waskins hypothecated four of his shares previously held, and his agreement recited that, as soon as the mortgage loan should be reduced to such a sum as the board should in its discretion regard as secured by the property itself, he (Waskins) was to have the privilege of surrendering the shares and receiving their full paid par value. The remaining two hypothecations by Waskins were for additional security on loans made to Nathaniel West and wife on two separate properties of theirs, and the agreements were in terms the same as that for the security on the Gregory loan. For these last two hypothecations Waskins again paid in new money, $700 for each loan, and was credited with the payments on his

second free share book. In all instances the borrowers received the full number of shares represented by the amounts of the loans.

All five of the transactions in question were, then, hypothecations of shares in form, all evidenced on regular share books of the association. Moreover, the pledgors were regularly allowed the dividends allotted to the free shareholders down to the time of the receivership, and had them entered on their books. Waskins said in testimony taken that he was allowed dividends on the amounts which he deposited against these loans, and the dividends were entered on the passbooks. "I did not withdraw the dividends, I just let them stay there. They originally allowed 6%. Later they allowed 5%, and then I think it was cut down to 4%." Whatever dividends were earned, he said, were allowed to the free shareholders, and his part of it was entered on the book.

The Frederick loan was never reduced to the security value of $1,200, but only to $1,371.33. And Frederick prays leave to pay the necessary amount above $1,000, and then to have the $1,000 in original value of his mother's hypothecated shares applied to pay off his entire indebtedness and secure a release of the mortgage. The first loan secured by Waskins was reduced below the specified amount of $3,500, but Waskins never exercised his privilege to withdraw the $1,500 represented by the new shares he took. He asks payment of the $1,500 now. Likewise there was no attempt to withdraw the money on shares pledged by Waskins for the remaining loans, and no determination by the board of directors that the loans would be adequately secured without continuation of the hypothecations. And with respect to these, Waskins prays that the amount on the pledge for the Gregory loan be applied in part payment of it, and that upon payment of the remainder of the debt the mortgage be released, and that similar settlements be made, according to the amounts still due, on the West loans; in the one case requiring that the sum of $275 be paid over by the receivers to Waskins and the mortgage be assigned

to him, and in the other case that the whole sum of $700 be repaid to him.

It is argued in support of the petitions for this priority over other free shareholders that, upon the making of the pledges, the shares became redeemed, as would shares of a borrower, and that thereupon the pledgors became creditors to the extent of the par values of the shares. The previously existing shares are in the argument treated as having been surrendered by the hypothecations. Statutes of the state provide that loans may be made on hypothecated stock held by borrowing members, and that the shares shall, upon the making of the loans, become redeemed, and the third party pledgors are in the argument brought within the same class as the borrowing members. No statute provides, explicitly at least, for a contingent undertaking by a third party for additional collateral security. Code, art. 23, secs. 165 to 169 (as amended). And it is urged that such a qualified relationship is therefore not permitted, unless a place can be found for it in this class of transactions in which shares are redeemed under and in accordance with the statutes.

The court does not concur in these views. Hypothecations by persons who continue as free shareholders are not found excluded by anything in the law. And the pledgors here received no loans or payments of any sort for redemption of their additional, pledged shares. If for the loans made there had been, as to the portions secured, a redemption of the pledged shares, as well as of the shares issued to the borrowers, there would have been redemption in shares of double the value of the amount of the loans secured. Further, the idea of redemption of the pledged shares seems inconsistent with the privileges of future withdrawal reserved in the contracts. In Mrs. Frederick's contract and in all Waskins' contracts, except that with respect to the Kahn loan, it was stipulated in terms that the pledgors reserved a right of surrender of the shares, and withdrawal of their par value in money in the future, when the loans secured

should be sufficiently reduced. And surrender and redemption are inconsistent with the keeping of free shareholders' books, and the entering of dividends in them in ordinary course.

In the opinion of the court the meaning of the transactions, taking them at their face value, was that the pledgors, being free shareholders, or becoming such for the purpose, as if investing in shares, continued in that position throughout, subject only to an agreement that the money represented by their shares should not be withdrawn pending the time when the respective loans should be reduced sufficiently, but should meanwhile stand applicable to the payment of those loans if need be, and that when the loans were reduced sufficiently the right of withdrawal should exist. At least as to the hypothecations of previously existing shares, which would be those for the loans to Frederick and wife and Gregory and wife, it is held that on being relieved of the obligations imposed upon them the pledgors would remain as they began, free shareholders, standing on a parity with other shareholders, and not entitled to priority, with a right to have the full amounts for which they hypothecated the shares applied to the discharge of the debts secured, or returned, as they pray. For these reasons the order of the chancellor must be affirmed as to those hypothecations.

With respect to the other three of the Waskins hypothecations, those for which new money was paid and new shares taken, an argument of greater weight is that these having been entered into, and the shares taken, not by way of coadventuring with the ordinary shareholders, but pursuant to special contracts for the limited, temporary purpose of giving the association and its shareholders security, and as a mere means of accomplishing that purpose, they should be treated by a court of equity, looking to the substance and disregarding the form, according to that peculiar purpose, and that the pledgors should accordingly be allowed the rights ordinarily incident to pledges.

There is nothing in a hypothecation to a building association which would require adherence to the form if the substance should be clearly otherwise, and no injustice would be done to others by departing from the form. A court of equity could then as freely pursue the substance as it does in treating a deed absolute in form as a mortgage. *Brown v. Reilly,* 72 Md. 489, 490, 20 A. 239; *Pomeroy, Equity Jurisprudence,* sec. 382.

Here, the taking of the shares appears to have been, at its inception, a means to the accomplishment of the purpose of giving the security. This fact alone would not be conclusive if the pledgor, going beyond the needs of accomplishing that purpose, undertook to the full the position of an ordinary shareholder, as he might. And the fact that he had dividends entered on his book, and exercised his choice between withdrawing them and leaving them in the association, argues that he did undertake this position of an ordinary shareholder. The court is of opinion that he did. It seems impossible to hold that, in his taking out the new shares in the three instances, under the circumstances recited, and taking his shares of dividends along with other free shareholders, thus reducing their dividends, he may have intended to confine his relationship to any limits other than those in which he stood by virtue of the hypothecations of his shares previously owned, or other than that in which any other free shareholders stood. The court therefore finds itself in concurrence with the decision of the chancellor denying the preferred application of the money prayed for.

*Order affirmed as to both appeals, with costs.*