WOLF, Receiver, ETC. *v.* CRYSTAL, ET AL.
[No. 241, September Term, 1964.]

WOLF, Receiver, ETC. *v.* CRYSTAL.
[No. 279, September Term, 1964.]

*Decided May 12, 1965.*

24

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Eugene A. Alexander, III,* with whom was *H. Paul Rome* on the brief, for the appellant.

*Charles Cahn, II,* with whom was *Nathan Hamburger* on the brief, for the appellees.

SYBERT, J., delivered the opinion of the Court.

These appeals are from two orders of the Circuit Court of Baltimore City (Oppenheimer, J.), both of which involved the question of whether a paid up free shareholder in a savings and loan association who has pledged his account as security for a loan from the association is entitled to set-off the account against the loan when the association becomes insolvent.

On June 2, 1962, the First Fidelity Savings and Loan Association, Inc. was placed in conservatorship by order of the Circuit Court of Baltimore City and on August 1, 1963, a receiver, Harry B. Wolf, Jr., was appointed by the court. Before making a liquidation distribution to free shareholders, the receiver petitioned the court for instructions in February, 1964. In his petition the receiver alleged that he had then "available for distribution, less the claims of general trade creditors and certain disputed claims, and expenses of administration and counsel fees, sufficient funds to pay a partial liquidating dividend to the free shareholders of approximately 10% of their accounts * * *." He then requested instructions in regard to, *inter alia,* the question which we have set out above. He contended that the allowance of such a set-off would be inequitable to "non-

borrowing free shareholders" and suggested, instead, that the amount of indebtedness due the association from each "borrowing member" should be reduced by the amount of any liquidation distribution due such member.

After notice was given, a hearing on the petition was held in open court at which several borrowers, including Beatrice Crystal, the appellee, appeared and opposed the receiver's position. On May 20, 1964, Judge Oppenheimer signed an order which provided that "a right of set-off exists in favor of those depositors or free shareholders of * * * [First Fidelity] whose free share accounts have been pledged with said Association as collateral for loans made from said Association before its insolvency to the extent and amount of their paid deposits in said free share accounts, but that set-offs shall not be recognized in any amount exceeding the amount of the loan of each of the individuals involved * * *." But because the Chancellor concluded that whether a right to a set-off existed in a particular case would depend on the facts and circumstances involved, he further ordered that all disputed claims be referred to a Special Master for hearing and report. The receiver, after authorization by the court, appealed from this general order (Appeal No. 241). The Chancellor based his May, 1964, order on an opinion filed in connection therewith. We shall discuss this opinion later.

In July, 1964, a hearing was held pursuant to the May order before Special Master J. Martin McDonough in regard to Beatrice Crystal's claim of a right to a set-off. According to the Special Master's report, Mrs. Crystal testified at the hearing that prior to the death of her husband in 1958 she had had a savings account in her own name in the Union Trust Company of Maryland and that her first savings and loan association account was opened with First Fidelity with funds received from her husband's estate. She said she shopped in the Pimlico area of Baltimore and often passed a "bank" there which advertised by way of a sign that "5% interest was paid on savings accounts". This was, in fact, the Pimlico office of First Fidelity Savings and Loan Association, Inc. Mrs. Crystal stated that she entered the office and was informed by an employee of the Association that "interest would be 5%, and savings were insured

up to $20,000". The Special Master found that she opened an account with the Association in October, 1959, by signing a "membership and savings share account application", and that she received a passbook. Mrs. Crystal testified that she made deposits from time to time and the ledger card, which is a part of the record, shows several withdrawals.

According to Mrs. Crystal's testimony, in January, 1962 (approximately five months before First Fidelity was placed in conservatorship), she went to the Association to withdraw $6,900 from her account but was told by an employee of the Association that if she left her savings account intact and borrowed the money from the Association, the account would continue to earn 5% interest and that the interest on the loan would be tax deductible. Mrs. Crystal then borrowed the $6,900 from the Association and was required to do the following things: (1) She signed a note payable to the Association in the amount of $6,900 with interest at six per cent per annum and providing for monthly payments of $500 each. The note stated on its face that "the undersigned hereby pledges the account of the undersigned in said Association * * * as security for said debt and authorizes any officer of said Association in the event of any default to sign the name of the undersigned to a withdrawal request and to withdraw any part or all of the funds from said account from time to time for interest and principal payment hereon." (2) She signed a withdrawal slip entitled "Withdrawal from Savings Account" in the amount of $6,900, on the face of which was printed "I hereby apply for withdrawal from my account and acknowledge receipt of", after which was typed "Sixty Nine Hundred". However, no withdrawal from her account was actually made, then or later. (3) She delivered her passbook, which showed a balance of $8,673.58, to the Association. At the same time the Association stamped the word "Hypothecated" across the ledger card of her savings account, which also showed a balance of $8,673.58.

The Special Master found that Mrs. Crystal paid $500 on the loan in February, 1962, and $300 in March, 1962, leaving an unpaid principal balance of $6,100; that no other payments were made on the loan; that no interest has ever been paid on the loan; and that her savings account contains a balance of

$8,673.58, on which the last interest was added on January 2, 1962. He further found that although Mrs. Crystal "acquired membership in a savings and loan association" because of the papers she signed or received, "she considered she was depositing her funds in a savings institution, as if it were a savings bank, and she contemplated such funds could be withdrawn at any time * * *."

Judge Oppenheimer, by an order filed on July 31, 1964, ratified the Special Master's report and ordered that "For the reasons set forth in the [May 1964] Opinion * * * of this Court * * * the $6,100 balance on the note of Beatrice Crystal owing by her to the Association, plus a sum equal to interest on the unpaid balances from January 5, 1962 [the date of the note], to the date of these proceedings, be and it is hereby set-off in full against her claim of $8,673.58 against the Association on her account * * *." The receiver appealed from this order after authorization by the Chancellor (Appeal No. 279). In the order the Chancellor specifically found that "Beatrice Crystal, by her agreement set forth in her application, by her acceptance of the passbook, and by her payments to the Association, was a member and shareholder of the Association." He also found that the assets of the Association were, at the time of the order, sufficient to pay all claims against it other than claims of members, depositors and free shareholders arising out of their payments to the Association.

While both in the lower court and here Mrs. Crystal argued, *inter alia,* that she never became a free shareholder in First Fidelity but was rather a creditor of the Association in the nature of a bank depositor, entitled to be paid before the free shareholders, we think that, on the evidence presented, Judge Oppenheimer was warranted in holding that she was a free shareholder. Her testimony indicates that she could read and that she was a person of normal intelligence. She had previously had an account with a bank; but in her dealings with the Association involved here the name "First Fidelity Savings & Loan Assn., Inc.", appeared in bold letters upon the office of the Association and upon all the papers which she signed or received, so that it appears unlikely that a person of average perception and understanding would have any reason for believing that

he or she was dealing with a bank. More importantly, she signed an application entitled "Individual membership of share account holder", which read, in part, "I hereby apply for membership and a Savings share account in the FIRST FIDELITY SAVINGS & LOAN ASSOCIATION and for the issuance of evidence of membership in the approved form." Moreover, on the inside of the front cover of the passbook issued to her when she opened her account, the name of the Association appears in large letters below her name and then the wording: "This certifies that the above named is/are members of FIRST FIDELITY SAVINGS & LOAN ASSN., INC. This certificate is issued and by the acceptance hereof is held subject to all the provisions of the Charter and By-laws of the Association and the laws of the State of Maryland * * *. The undersigned [Association] may treat the holder of record in the manner by which membership was made as the owner for all purposes * * * until this certificate, representing a preferred stock interest in the Association, is transferred on the books of the undersigned. * * *" Since there was no contention that Mrs. Crystal did not have the capacity to understand the instruments mentioned, nor any showing that there was any fraud practiced upon her in connection therewith, she is bound by them. *Plitt v. McMillan,* 235 Md. 349, 201 A. 2d 787 (1964); *Rossi v. Douglas,* 203 Md. 190, 100 A. 2d 3 (1953). We think the factors just mentioned distinguish the case before us from *Building & Loan Assn. v. Dembowczyk,* 167 Md. 259, 173 Atl. 254 (1934), in which a woman who could not speak English was held to be a depositor, and therefore a creditor, rather than a free shareholder, of the association there involved. The certificate in the passbook constituted Mrs. Crystal a member and a shareholder. 13 Am. Jur. 2d, *Building and Loan Associations,* sec. 22, p. 163. When one becomes a member of a savings and loan association, he thereby becomes chargeable with knowledge of the provisions of its charter and bylaws and is bound by them. *Bertche v. Equitable Loan & Invest. Asso.,* 48 S. W. 954 (Mo. 1898); *State ex rel. McCormack v. American Bldg. & Loan Asso.,* 150 S. W. 2d 1048 (Tenn. 1941).

We now turn to Judge Oppenheimer's May, 1964 opinion, since the two orders before us in these appeals were based there-

on. In that opinion Judge Oppenheimer stated, in effect, that when a free shareholder in a savings and loan association borrows money from the association by pledging his paid up account with the association, a debtor-creditor relationship arises and that the free shareholder then has the joint status of member and debtor; but that when the association becomes insolvent, the debtor-creditor relationship becomes predominant and controlling, so that the ordinary rules applicable to debtor-creditor relationships are determinative of whether a right of set-off exists. Judge Oppenheimer relied on the line of cases applying the so-called "Maryland Rule". That rule, as laid down in *Low St. Bldg. Assn. v. Zucker,* 48 Md. 448 (1878), and as applied or recognized in a number of later cases by this Court,[1] is that upon the insolvency of the association, a borrowing member who has pledged as security for the loan shares of the association which he is in the process of purchasing by installment payments, is entitled to set-off against the amount of the loan, and interest thereon, all sums paid by him as dues upon his stock and as premiums and interest upon the loan.[2] (For consideration of the Maryland Rule and other rules see 13 Am. Jur. 2d, *op. cit.,* secs. 118-121; 3 Clark, *Law of Receivers* (3rd ed.), sec. 910; Anno. 50 A.L.R. 533.)

The rationale of the Maryland Rule is that there is a twofold relationship between the borrower and the association, namely, debtor-creditor and member-association, and that upon the association's insolvency the debtor-creditor relationship becomes predominant because it has become impossible for the association any longer to carry out its contract with its members (for example, one facet of such impossibility would be that the

---

1. The Peter's Build. Ass'n, No. 5, of Balto. v. Jaecksch, 51 Md. 198 (1879); Hampstead Building Asso., No. 11 v. King, 58 Md. 279 (1882); Southern Bldg. As'n v. Price, 88 Md. 155, 41 Atl. 53, 42 L.R.A. 206 (1898); Preston v. Woodland, 104 Md. 642, 65 Atl. 336, 10 Ann. Cas. 389 (1906); Murphy v. Preston, 107 Md. 444, 69 Atl. 114 (1908); Frederick v. Lyons, 173 Md. 95, 194 Atl. 815, 113 A.L.R. 236 (1937).

2. The Maryland Rule has been construed as not broad enough to cover a nonborrowing member who hypothecates his stock as security for loans to borrowing members. Frederick v. Lyons, supra, note 1.

shares could never be issued even though eventually paid for in full.) Judge Oppenheimer stated that he could see no logical reason why the rule should not be extended to the situation where the borrower is a paid up free shareholder rather than an installment purchaser of shares. We think that, both upon reason and upon the authorities, Judge Oppenheimer's conclusion was correct.

While, as noted, the cases in which this Court applied the Maryland Rule involved installment purchasers of shares, those cases recognize that the insolvency or dissolution of an association is equivalent to a rescission and termination of the contract between the association and its members, salient features of which were the undertaking of the association to remain in business and to pay its members the fixed value of their stock in full, and that these factors become most material in determining the rights of borrowers. As was said by Judge Alvey for the Court in *Low St. Bldg. Assn. v. Zucker, supra,* in speaking of an insolvent building association:

> "* * * The circumstances of the Association therefore, and its inability to carry out in good faith the contract with the mortgagors, must terminate the contract as originally contemplated, and the parties must occupy the position that they would occupy if the Association were dissolved. And treating the case upon that footing it falls immediately within the principle of the case of *Windsor & Applegarth vs. Bandel,* 40 Md., 172. In that case the Association had been dissolved, and in speaking of the rights of the mortgagors, who had given a mortgage on the redemption of shares, as in this case, this Court said, that by the dissolution of the Association before the period originally contemplated, and the alteration of the articles, the mortgagors' contract was at an end. It was impossible for them to perform the covenants contained in their mortgages, and they were entitled to have them released upon the payment of the sum *justly* due. * * *"
> (Emphasis in original.) (at pp. 453-454 of 48 Md.)

The Court, in *Zucker,* then found that the mortgagors were en-

titled to have credited against their mortgage debt all sums which they had paid in the nature of principal and interest upon their stock, without any deduction for losses of the association. To the same effect, see *The Peter's Build. Ass'n, No. 5, of Balto. v. Jaecksch,* 51 Md. 198 (1879) ; *Hampstead Building Asso., No. 11 v. King,* 58 Md. 279 (1882) ; *Southern Bldg. As'n v. Price,* 88 Md. 155, 41 Atl. 53 (1898).

As Judge Oppenheimer pointed out in his May, 1964 opinion, in the present case there are no rights of other classes of creditors to be considered, but only the rights of the shareholders as between themselves are involved, and he quoted the following excerpt from the opinion of Judge Hammond for the Court in *Jones, Adm. v. Hamilton, Adm.,* 211 Md. 371, 127 A. 2d 519 (1956) (a case which dealt with trust accounts in savings and loan associations) :

> "Maryland decisions have concluded that there is no rational basis for drawing a distinction between accounts in savings banks and accounts in savings and loan associations as far as the rights of depositors as between themselves are concerned. *Bierau v. Bohemian Bldg., etc., Ass'n, supra; Wetzel v. Collin,* 170 Md. 383; *Gimbel v. Gimbel,* 148 Md. 182; *Kozlowska v. Napierkowski,* 165 Md. 620. * * *" (p. 380 of 211 Md.)

Given the Maryland Rule as applied in the cases, its extension to allow the right of set-off to borrowers whose shares have been paid in full would seem to be impelled by the authorities cited. To hold otherwise would amount to making a distinction without the existence of any real difference, and would, it seems to us, amount to a harsh and unwarranted discrimination against the borrower whose shares were already paid up at the time of the loan. And, as Judge Oppenheimer well said in his opinion, "Recognition of the right of set-off does not violate the equitable rights of non-borrowing shareholders. All shareholders, before insolvency, had the right, under the charter and by-laws, to withdraw, in part or in whole. The shareholders who borrowed before insolvency allowed their monies to remain for the use of all members instead of exercising their right of withdrawal."

32

While, as we have seen, the relation of debtor-creditor between the borrowing member and the association becomes predominant upon the insolvency of the latter, the borrower remains a free shareholder. 13 Am. Jur., *op. cit.*, secs. 108, 111. We have expressly held that where the funds in a borrower's account amount to more than his debt, the debt is extinguished but as to the remainder in his account the borrower is regarded as a stockholder and shares pro rata with the other shareholders upon liquidation of the association's assets. *Murphy v. Preston,* 107 Md. 444, 69 Atl. 114 (1908). Thus, while Mrs. Crystal is entitled to set-off so much of her account as is necessary to pay her note, with interest, she is not entitled to priority over the other free shareholders for the excess in her account.

We point out that the case of *Jolly v. First Union,* 235 Md. 161, 201 A. 2d 4 (1964), has no bearing on the issues presented here, since it dealt only with the rights of a withdrawing free shareholder under Code (1963 Cum. Supp.), Art. 23, sec. 161 X.

*Orders affirmed; appellant to pay the costs.*