## MARTHA POLLY *v.* CAMDEN BUILDING AND SAVINGS ASSOCIATION
[No. 40, October Term, 1934.]

*Decided November 22nd, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*William Sinsky,* for the appellant.

*Paul R. Kach,* with whom was *Karl F. Steinmann* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint alleged: "That the defendant is incorporated as a building and savings association and is engaged in the business of accepting money from depositors to whom it agreed to pay six (6%) per cent interest, and lending money to borrowers from whom it accepted mortgages on real estate * * * to be paid in

small installments." That its place of business has a bank front, "and the appearance thereof is in the nature of a bank with a large sign over its window reading 6% paid on savings account." That complainant believes she is the largest depositor and has about one-tenth of the total assets. That all of her life savings were deposited with the association "as savings," and that on August 6, 1930, the sums she had on deposit were put in the following names:

Book No. 5074—Mrs. Gertrude Messner—Terms
   "Trust fund subject to order of Mrs. Martha
      Polly"
      Balance ................................................. $2,500.00
Book No. 5075—Mrs. Anna L. Jones—Terms
   "Trust fund subject to order of Mrs. Martha
      Polly"
      Balance ................................................. $2,500.00
Book No. 5076—Mrs. Mathilda Dressel—Terms
   "Trust fund subject to order of Mrs. Martha
      Polly"
      Balance ................................................. $2,500.00
Book No. 5073—Account in name of Mrs.
   Martha Polly
      Balance of which is.............................. 676.25
                                       ——————
                                       $8,176.25

That the association held itself out to pay 6 per cent. and as ready and willing to pay out the money on demand. That plaintiff was promised 6 per cent. interest, but no interest has been paid on said accounts since July, 1933. That plaintiff should be classed and designated as a general creditor and preferred to free shareholders. The bill further alleges inefficient management, diversion of assets, improper preferences, payment of dividends out of capital, and practically every violation of duty of which directors of such a corporation could be guilty; that the institution has been run in the interest and for the benefit of the officers and directors, and not in the interest of the depositors and free shareholders; that the corporation

is insolvent; that said officers remaining in charge will further injure said association and destroy public confidence; that the affairs of the association have become hopelessly confused; and that the creditors and shareholders will suffer irreparable damage unless a receiver is appointed.

The prayer of the bill is: A. For the appointment of a receiver. B. That the corporation be liquidated. C. That the defendant and its officers, directors and employees be restrained from disposing of any of the funds. D. For general relief.

The answer denies all the material allegations of the bill. It denies that it accepted money from depositors at any fixed rate of interest, or that it ever had a sign reading "6% on savings account," or that it held itself out as a bank; it denies that there has been any negligent, inefficient, or wrongful management of the association; it avers that the association has been conducted for the benefit only of the shareholders and that all shareholders are of one class, and that no profits have been used except to pay dividends to shareholders; it refers to the passbook of complainant in refutation of the charge that the association held itself out to pay 6 per cent. interest or to pay on demand; that plaintiff is not entitled to any preference over any other shareholder; it denies that the association is insolvent, and alleges that it has paid, and is paying, its debts in the regular course of business, and that the fair value of its property is in excess of its debts; that, pursuant to Acts 1933, ch. 47, it is proceeding to collect its assets and make ratable distribution to all free stockholders, and the plaintiff and her attorney have been kept advised of the proceedings being taken; that the association is willing that the plaintiff shall have an examination of its books for the purpose of determining the truth or falsity of the statement in the answer. This appeal is from a decree dismissing the bill of complaint.

In the view we take of this case, it is not necessary to determine here whether the plaintiff is a general creditor or a free shareholder, as in either event, on the whole

case, in our opinion there is no necessity for the appointment of a receiver. If plaintiff desires, she can have her status determined in a suit at law.

In the matter of the appointment of a receiver, we said in *Polish-American Building & Loan Assn. v. Dembowczyk*, ante. p. 259, 173 A. 254, 157: "The appointment of a receiver is within the sound discretion of the court, and this power should be exercised with caution and circumspection. The appointment of a receiver should never be made because it could do no harm, and the facts alleged or proven in order to bring into action this extraordinary and far-reaching power, should show in a clear and convincing manner that without such an appointment there would be danger of great damage to the party asking for the receiver, that it is necessary for the protection and preservation of the rights of the parties in interest. * * * And by the Acts of 1933, chapter 531, it is expressly provided: 'Notwithstanding any allegation or proof of insolvency, the appointment of a receiver shall remain in all cases within the sound judicial discretion of the court'."

In this case the chancellor, after hearing all the testimony and after giving the plaintiff a rehearing, reached the conclusion that the appointment of a receiver was not necessary for the protection of the rights of the plaintiff; and, after a careful examination of the record, we find no cause to disturb his ruling. Most of the allegations of the bill of complaint, especially those which attribute improper motives or dishonest conduct to the defendant, its directors or officers, are either entirely unsupported by proof or refuted by the great weight of the oral and documentary evidence. There are only two matters which in our opinion need be adverted to.

1. It is shown by the evidence that dividends were allowed in one or two years when they were not earned, and that their payment tended to reduce the capital. This was certainly bad judgment and illegal, and might have given rise to an action at law on the part of the plaintiff if she did not receive her portion of the dividends im-

properly paid. But there is no evidence of any bad faith or fraud in connection with these payments. No good purpose would be served by the appointment of a receiver in this connection.

2. An arrangement was made between certain creditor banks, the defendant, and Karl F. Steinmann, its attorney and one of its directors and free shareholders, by which Steinmann agreed to take over or become primarily responsible for the obligations of defendant to the banks, and release defendant from its obligations to him both as a lender and as a depositor or free shareholder, in consideration of the assignment to him of certain mortgages and notes held by the defendant and the release of his own indebtedness to the defendant. The liabilities taken over or guaranteed by Steinmann were $20,074.07 to the Equitable Trust Company and $5,975 to the Maryland Trust Company. The indebtedness to himself, released by Steinmann, were loans by him to the defendant, $15,499.49; deposits by him to his free share account, less ten per cent. reserve, $21,443.61—a total of $62,992.17. The notes and mortgages with accrued interest turned over to Steinmann amounted to $63,314.66, which included his notes to the defendant of $15,721.55. The difference, $322.59, he paid the defendant. The testimony is that this arrangement was brought about at the instance of the trust companies, which were urgently insisting upon a reduction of the defendant's indebtedness to them. The companies were willing to continue the loans if Steinmann would become personally responsible for them, and would agree to pay on account to them respectively $400 and $125 per month, with interest at four per cent. The two companies were to retain the collateral of the defendant which they already held in the amount of $73,000.

The appellant contends that the defendant exceeded its powers in turning over its assets to Steinmann absolutely on his mere guaranty of its obligations, with no security that defendant would be finally relieved of them, Steinmann giving only his unsecured personal obligation to make the monthly payments, and the defendant still

remaining liable to the trust companies by reason of its collateral still held by the trust companies; also that the defendant, while in the process of liquidation and at that time unable to pay all its free shareholders in full, could not legally prefer Steinmann by paying him the full amount of his free share deposits.

It may be that the arrangement made would not commend itself to a court of equity, or be sustained if properly attacked by a bill to set it aside. It is not apparent from the record why satisfactory arrangements could not have been made with the trust companies by turning over to them as additional collateral the mortgages and notes which were assigned absolutely to Steinmann, which, exclusive of the notes, according to expert testimony, had a value of $19,700. The amount of the notes assigned (including notes of Steinmann for $15,721.35) was $20,-726.12. So far as appears from the record, all parties could now be put in their original position by a voluntary or compulsory cancellation of this transaction. Steinmann testified that he had not collected any of the securities assigned to him. He could be reimbursed for the amounts already paid by him to the trust companies. Or, if the trust companies were not parties to the transaction by which the securities were assigned to Steinmann or in any way affected by it, and he could not therefore be released from his obligations to them, he could be protected as against the defendant by collateral instead of absolute assignments of the securities assigned to him.

As to all these matters we express no opinion and make no decision. It would be improper to do so in a case to which neither Steinmann nor the trust companies are parties. But, if the contentions of the appellant as to this transaction could be properly sustained in this case, it would not follow that a receiver should be appointed. We see no occasion to add the unnecessary costs incident to a receivership. In so far as the decree appealed from refused the appointment of a receiver, it will be affirmed; but the order dismissing the bill will be reversed, and the case will be remanded, so that an order may be passed by

the chancellor permitting plaintiff within such time as the chancellor shall appoint to ask leave to amend her bill of complaint by adding necessary parties, allegations, and prayers, to enable the chancellor to determine whether the defendant exceeded, or improperly exercised, its powers in the matter of the alleged preference in favor of the said Karl F. Steinmann, and in the absolute transfer to him of assets of the association in the manner and for the consideration above mentioned, and whether the agreement by which this was done should be set aside, and on what terms.

*Decree affirmed in part and reversed in part, and case remanded for further proceedings in accordance with this opinion, each side to pay half the costs.*